RAYMOND F. TEETER, JR., Appellant, *v.* ALLSTATE INSURANCE COMPANY, Respondent.

Fourth Department, November 11, 1959.

*Maas, Weinstein & Hutchings* (*Leonard E. Maas* of counsel), for appellant.

*Brown, Zurett, Sullivan, Smith & Gough* (*William V. Gough* of counsel), for respondent.

HALPERN, J. This case presents the question of whether an insurance company has the right to rescind *ab initio,* on account of the fraud of the insured, an automobile liability insurance policy which was issued after the taking effect of the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, §§ 93 to 93-k, as added by L. 1956, ch. 655), commonly known as the compulsory insurance law.

On August 15, 1957, the defendant insurance company, through its agent at a Sears, Roebuck store, issued to the plaintiff a binder for a liability insurance policy covering his automobile. At the same time, it gave the plaintiff a certificate of insurance, pursuant to section 93-b of the Vehicle and Traffic Law, certifying that it had issued to the plaintiff " a policy complying with Financial Security Act ". This certificate (FS-1) was made out on a printed form prescribed by the Commissioner of Motor Vehicles. Section 93-b of the Vehicle and Traffic Law provides that no motor vehicle may be registered " unless the application for such registration is accompanied by proof of financial security which shall be evidenced by a certificate of insurance ". The plaintiff filed the certificate of insurance with the Bureau of Motor Vehicles and, on the basis thereof, obtained a certificate of registration.

In procuring the binder, the plaintiff had represented to the defendant that he had not had any accident within the preceding two years and also that no prior policy of insurance issued to him had ever been cancelled. Both statements were concededly false. It is now admitted by the plaintiff that a prior policy of insurance issued to him by this very defendant had previously been cancelled and also that he had had an accident within the two-year period.

After the binder and the certificate had been issued by the defendant's agent, the plaintiff's application was referred for processing to the regional office of the defendant and defendant's employees in that office quickly discovered the falsity of the plaintiff's representations. Thereupon, on August 23, 1957, the defendant wrote a letter to the plaintiff, notifying him that

" the insurance extended under the binder " was thereby " cancelled and declared void from its inception " and enclosing the defendant's check in the amount of $13.05 in full refund of the portion of the premium which the plaintiff had paid.

Section 93-c of the Vehicle and Traffic Law, as it read in 1957 (L. 1956, ch. 655) provided so far as here relevant: " No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation or failure to renew by the insurer until at least ten days after mailing to the named insured at the address shown on the policy a notice of termination. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include in type of which the face shall not be smaller than twelve point a statement that proof of financial security is required to be maintained continuously throughout the registration period and that failure to maintain such proof of financial security is a misdemeanor ". (The statute was amended in 1958 to provide for 20 days' notice of termination except in case of nonpayment of premium in which case a 10-day notice would suffice. L. 1958, ch. 661.)

The letter of August 23, purporting to cancel the binder " from its inception " concededly did not comply with section 93-c since it did not give the plaintiff a notice of termination to take effect 10 days thereafter.

A few days after sending the letter to the plaintiff, the defendant sent to the Motor Vehicle Bureau a " Notice of Termination " on the printed form prescribed by the bureau (FS-4). The defendant did not advise the bureau that the insurance coverage had been cancelled " from its inception ". The notice merely stated that the insurance coverage had been terminated " effective 8-15-57 " and that the date of the notice to the insured was " 8-23-57 ". The Commissioner apparently overlooked or disregarded this discrepancy and issued a revocation order, revoking the plaintiff's certificate of registration because of lapse of insurance coverage and directing him to surrender his certificate of registration and number plates immediately and further advising him that he could not obtain a new registration " for this or any other vehicle " for a period of 30 days from the date of surrender.

In the meantime, immediately upon receipt of the letter of cancellation from the defendant, the plaintiff had obtained insurance from another insurance company and had forwarded

a new FS-1 certificate of insurance to the Bureau of Motor Vehicles. This certificate was rejected by the bureau on the ground that there had been a " lapse of insurance coverage from 8-15-57, the date of termination of insurance coverage by Allstate Insurance Company " to August 27, 1957, the effective date of the new policy and that there had been " no voluntary surrender of your registration certificate and plates during that period ". The bureau advised the plaintiff that a new application for registration could not be submitted until 30 days after the surrender of " the revoked items ". This letter and the order of revocation were apparently issued by the bureau in reliance upon the defendant's certification that the insurance coverage had been effectively terminated as of August 15, 1957. Under the statute, it was the plaintiff's duty to surrender his certificate of registration and plates prior to the date upon which the termination became effective unless he obtained other insurance coverage before that date (§ 93-b, subd. 1). Since, according to the bureau's records, the plaintiff had failed to surrender his certificate and plates prior to August 15, 1957, the date of termination, and had not obtained new insurance before that date, the imposition of a 30-day suspension was mandatory under the statute (§ 93-h, subd. 1, par. [b]).

The plaintiff thereupon brought a proceeding under article 78 of the Civil Practice Act against the Commissioner to annul the revocation of his certificate of registration and the 30-day suspension. That proceeding was dismissed upon the ground that the Commissioner was not required to investigate the facts with respect to a termination of insurance certified to him, and that therefore the revocation order was proper. We are informed that an appeal is pending in this court from the dismissal.

The plaintiff also brought the present action for a declaratory judgment, seeking a declaration that the termination by the defendant was not effective as of August 15, 1957, that it could not be effective under the statute until September 2, 1957, and that therefore there had been no lapse in insurance coverage.

The complaint also contains a second cause of action for money damages for the cost of conducting the article 78 proceeding.

Although the defendant used the word "cancelled " in its letter of August 23, and although it filed with the Commissioner a notice of termination in the form prescribed by the Commissioner pursuant to section 93-c, the defendant maintained upon the trial of this action and maintains here that section 93-c has no application to this case at all. The defendant maintains that

it had not cancelled the policy but had rescinded the policy *ab initio* in the exercise of its common-law right to rescind the policy because of fraud.

This contention presents sharply the question, upon which no appellate court of this State has as yet passed, whether the common-law right of rescission *ab initio* for fraud survived the adoption of the statute or whether the statutory method of terminating coverage on notice, prescribed in section 93-c, is the sole and exclusive method by which insurance coverage, for which a certificate of insurance has been issued under section 93-b, can be terminated. We think that the latter alternative is the correct one.

It is to be noted, first of all, that the language of section 93-c is comprehensive and all-embracing. It refers to '' termination for any cause whatsoever ''. This language, we believe, necessarily includes rescission for fraud. The provision of the section for a 10-day notice of termination makes it impossible to have *ab initio* rescission. While the provision does not take away the right to rescind for fraud, it restricts its operative effect. The rescission cannot be made effective retroactively as it could be at common law; it can be made effective only prospectively, as of a date not less than 10 days after the service of the prescribed notice.

It is impossible to reconcile the existence of a right to rescind *ab initio* with the general scheme of the compulsory insurance law. The purpose of the statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage. In the first instance, a certificate of registration will not be issued unless there is submitted with the application proof of financial security by a certificate of insurance issued by an insurance company or its equivalent (§ 93-b). If, after the certificate of insurance is issued, the insurance company decides to terminate the coverage for any reason, it must give 10 days' notice to the insured and he must either procure other insurance before the specified termination date or surrender forthwith his registration certificate and number plates. If he does not do this, his certificate of registration will be revoked and he will be unable to obtain a new certificate of registration for a period of 30 days and, furthermore, if he operates his automobile after the termination date, he may suffer the loss of his driver's license for a period of one year and he may be prosecuted for a misdemeanor (Vehicle and Traffic Law, § 93-h, subds. 2, 7; § 93-i). To a large extent, the statutory scheme rests upon these penal sanctions. The burden is cast upon the insured to comply

with the statute and to cease operating his automobile upon the date specified in the termination notice, if he does not obtain new insurance coverage before that date.

But it would be obviously impossible for an insured to comply with his statutory obligation if a common-law right to rescind *ab initio* were allowed to exist alongside the statutory provision for termination by notice. If a rescission were allowed to be effective retroactively as of the date of the issuance of the policy, it would be impossible for the insured to do what the statute requires him to do, i.e., either procure new insurance or surrender his number plates, prior to the date upon which the termination of the coverage became effective. Furthermore, he would be retroactively rendered guilty of a misdemeanor for having operated from the date of the issuance of the policy to the date of the rescission, even though his conduct was lawful at the time that he engaged in it. Such a result could not have been intended by the Legislature.

Once a certificate of insurance under section 93-b has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions. Many common-law contractual rights are restricted by the statute. Thus, for example, there is, at common law, the absolute right to refuse to renew a policy upon the expiration of its term but this is restricted by the statute so that the policy continues in force after its expiration date without a renewal, unless and until notice of termination is given in accordance with the statute. The common-law right to rescind *ab initio* for fraud must likewise yield to the superior force of the statute. Whether the action taken by the insurance company upon the discovery of the fraud is called a rescission or a cancellation, it cannot be effective to terminate the policy until a date specified in the notice not less than 10 days after its mailing.

The term " cancellation " is not used in the statute in its technical insurance sense but in its colloquial sense, as meaning a termination of coverage under a policy in any manner prior to the expiration date therein specified (cf. concurring opinion of Presiding Justice NOLAN in *Ætna Cas. & Sur. Co.* v. *O'Connor,* 8 A D 2d 530, 534). The word " cancel " is defined, as an ordinary word of the English language, as meaning " to annul or destroy; to revoke or recall " (Webster's New International Dictionary as quoted in *Matter of Otterbein* v. *Babor & Comeau Co.,* 272 N. Y. 149, 152). The *Otterbein* case dealt with section

54 of the Workmen's Compensation Law which referred to the " cancellation " of an insurance policy. This term was held broad enough to include a rescission by mutual consent as well as a cancellation by act of one of the parties and the rescission was held to be ineffective in the absence of compliance with the statutory requirements. As has been noted, in the statute before us there is not only a reference to " cancellation " but also to " termination for any cause whatsoever ". This, a fortiori, includes rescission.

In the recent case of *Ætna Cas. & Sur. Co.* v. *O'Connor* (8 A D 2d 530, *supra*) the court held that a provision in the Assigned Risk Plan, adopted pursuant to section 63 of the Insurance Law, giving the insurance company the right to cancel on notice for various reasons, including the obtaining of the insurance through fraud, negated the right to rescind *ab initio* for fraud. The court held that the only remedy of the insurance company was to cancel on notice in accordance with the plan, if it found that it had been induced to issue the policy by fraud.

If the insurer wishes to avoid or minimize the risk of being held liable on a policy obtained by fraud, for a period running from the date of its issuance to a date 10 days after mailing of notice of termination, it must make its investigation of the applicant's record and the truthfulness of his representations prior to issuing a binder or an insurance policy and the accompanying certificate of insurance. Once an insurer issues a binder or insurance policy and gives the insured a certificate of insurance for filing with the Bureau of Motor Vehicles, it is barred from asserting that the insurance coverage failed to attach on the date of issuance or that it failed to continue in force thereafter, during the period during which the certificate of insurance remained uncancelled. A certificate of insurance constitutes a representation by the insurance company to the public and to the State authorities that valid insurance coverage is in effect. The whole scheme of the statute would be frustrated if the insurance company were allowed, because of a hidden infirmity in the policy, to nullify it retroactively with respect to a period during which the company had led the public and the authorities to believe that insurance coverage was in effect (cf. *Shuba* v. *Greendonner*, 271 N. Y. 189; *Reese* v. *Reamore*, 292 N. Y. 292).

The court below stressed the fact that the primary purpose of the statute was the protection of the public and it drew a distinction between rescission affecting the public and rescission affecting only the parties to the contract. The court intimated that, if an accident had occurred between the date of the issuance of the policy and the date of the purported notice of rescission,

it might have held the insurance company liable to the injured third party but it held that, since no third party was involved and the controversy was one only between the insurance company and the insured, the common-law right of *ab initio* rescission was still available and the company had the right to nullify the policy from its inception. The court accordingly dismissed the complaint.

The line of reasoning adopted by the trial court at first blush appears to be persuasive but there are three answers to it: First of all, the language of the statute with respect to the method of terminating coverage is all-embracing. Secondly, the statutory scheme relies, to a large extent, upon penal sanctions which are wholly incompatible with the recognition of a right of rescission *ab initio* as between the insurer and the insured. The Legislature plainly intended to give the insured a reasonable opportunity to obtain other insurance or to surrender his license plates, without suffering any penalty, in the event of a termination of coverage for any reason. Penalties were to be imposed only if the insured failed to act with reasonable promptness after he had received notice of termination. This is incompatible with a right to rescind the policy retroactively even as to the insured himself. Finally, while a statute could be drawn which would adequately protect the public by suspending the right of rescission *ab initio* only insofar as it affected third parties and allowing it to remain available as between the insurer and the insured (omitting the penal sanctions in that case), there are no such provisions in the present statute. The courts have no power to rewrite the statute so as to protect the public by a method different from that chosen by the Legislature. The Legislature has chosen to protect the public, under the present statute, by forbidding retroactive rescission *in toto* and by requiring that any termination of the coverage be brought about by prospective notice to the insured, coupling this with the imposition of penal sanctions upon the insured, if he did not act promptly after receipt of the notice.

The insurance company upon this appeal, does not attempt to defend the distinction drawn by the trial court but it asserts the right to rescind the policy *ab initio,* both as to the insured and as to third parties. The defendant is unable to find any provision of the compulsory insurance law which supports its position but it turns, for a statutory basis for its argument, to other statutes in the general field which it claims are *in pari materia.*

The defendant points to the provision of the old Motor Vehicle Safety-Responsibility Act that the liability of an insurance company under a policy issued under that law " shall become

absolute whenever loss or damage covered by said policy occurs " (Vehicle and Traffic Law, § 94-q, subd. [i], par. [1]) and it places great stress upon the fact that the new statute does not contain a similar provision. The defendant points out that, under the new statute, defenses growing out of the failure of the insured to comply with the conditions of the policy after the occurrence of an accident are still available to the insurance company (cf. Vehicle and Traffic Law, § 93-a, subd. 4, par [a]). We fail to see how the absence of a provision making the policy absolute as to injured third parties and wiping out the usual defenses bears upon the question before us. The Legislature has taken one step to protect the public by forbidding a retroactive rescission. It has not undertaken to protect the public further by taking the more drastic step of depriving the insurance company of defenses growing out of the failure of the insured to comply with the provisions of the policy after the occurrence of an accident. Indeed, it has been argued that this is a gap in the statute which ought to be closed (*General Acc. Fire & Life Assur. Corp.* v. *Martino,* 12 Misc 2d 935) but the failure of the Legislature to do so is of no relevance here.

Neither do we find any support for the defendant's position in the recent act of the Legislature creating the Motor Vehicle Accident Indemnification Corporation (Insurance Law, art. 17-A, §§ 600–626, as added by L. 1958, ch. 759). That statute is designed to provide a remedy for persons injured by various classes of motor vehicles for which there is no insurance coverage, among them "insured motor vehicles where the insurer disclaims liability or denies coverage" (Insurance Law, § 600, subd. [2], cl. [6]). We see no basis for the inference which the defendant seeks to draw from this provision that the Legislature recognized that there might be a retroactive rescission of a liability insurance policy. Ample room for the operation of the statutory language may be found in cases in which liability is disclaimed because of a breach of a condition of the insurance policy, referred to above, or cases in which coverage is denied for a variety of reasons wholly unrelated to rescission.

The defendant also directs attention to the reference in the Motor Vehicle Accident Indemnification Corporation Law to "motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance" (Insurance Law, § 600, subd. [2], par. [3]) and the defendant argues that this indicates that the Legislature recognized that there might be motor vehicles which were registered in this State but which did not have insurance coverage during the period of registration because of *ab initio* rescission of the

coverage. This argument overlooks the fact that an owner of a registered motor vehicle might continue to operate it *illegally,* without surrendering his certificate of registration and license plates, after the insurance coverage had been terminated on 10 days' notice pursuant to section 93-c of the Vehicle and Traffic Law. This is the type of case, rather than a case of *ab initio* rescission, to which the quoted provision refers. There is nothing in the quoted provision which is in conflict with the finding of a legislative intent to assure, under the compulsory insurance law, that so long as automobile owners obeyed that law, there would be no registration outstanding without concurrent and continuous insurance coverage. As we have demonstrated, *ab initio* rescission is incompatible with that legislative purpose.

We are not called upon to say at this time what remedy, if any, an insurance company may have against an insured in tort or in quasi contract for fraudulently inducing it to issue an insurance policy which it was thereafter forbidden to terminate except on the statutory notice. We do not express any opinion as to whether, in the event that the insurance company were required to pay damages to a third party growing out of an accident which occurred before the company could make its termination effective under the statute, the company could maintain an action against the insured for reimbursement (cf. Vehicle and Traffic Law, § 94-q, subd. [i], par. [1]).

All that we now decide is that the defendant had no right to rescind the policy *ab initio* and that its notice of termination, mailed on August 23, 1957, could not become effective under the statute, as it read at that time, before September 2. The insurance coverage by the defendant therefore was still in force when the plaintiff obtained new insurance on August 27, 1957, so that there was never any lapse of insurance coverage (cf. § 93-c, as amd. by L. 1958, ch. 696). A declaratory judgment to that effect should accordingly be entered.

There remains for consideration the additional cause of action in the complaint for damages alleged to have been sustained by the plaintiff by reason of the defendant's having advised the authorities that its coverage of the plaintiff's automobile had terminated on August 15. We do not believe that this should be dealt with in the action for a declaratory judgment. The plaintiff's claim, in essence, is that he was wronged by the defendant's conduct in notifying the Commissioner that the policy had been terminated on a date earlier than the date as of which it could properly be terminated under the statute. Whether there is liability for damages for this conduct may well

depend upon whether the defendant acted in good faith and upon reasonable grounds in interpreting the statute as it did; as to that, we express no opinion. Neither do we express any opinion as to whether the fact that the plaintiff had initiated the chain of events by his own fraud bars a recovery of damages. The cause of action for damages should be dismissed, without prejudice to the plaintiff's bringing an action at law for damages, if he is so advised.

The judgment appealed from should be reversed on the law and the facts and a declaratory judgment entered in favor of the plaintiff in accordance herewith.

All concur. Present — KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of plaintiff declaring the plaintiff's rights in accordance with the opinion, with costs.