■ In the Matter of LIBERTY MUTUAL INSURANCE COMPANY, Appellant, v PATSY McCLELLAN et al., Respondents-Respondents, and WELDON AIRCRAFT SERVICES et al., Respondents.— In a proceeding to stay arbitration, the petitioner Liberty Mutual Insurance Company (hereinafter Liberty), appeals from an order of the Supreme Court, Queens County (Leviss, J.), dated February 14, 1985, which, inter alia, denied the application.

Ordered that the order is reversed, on the law, with costs, and the petition is granted.

On April 9, 1983, the respondent Patsy McClellan was involved in an automobile accident in which her vehicle collided with a vehicle which was owned by the respondent Weldon Aircraft Services, Inc. (hereinafter Weldon) and which was being operated at the time by Weldon's president, the

respondent Vernon Moore. Approximately one year later, McClellan served a demand for arbitration upon her insurance carrier, the petitioner Liberty, claiming that at the time of the accident the Weldon vehicle was not insured, and seeking to recover $100,000 under the uninsured motorist provisions of her policy for losses due to injuries sustained as a result of the accident.

Liberty thereupon commenced the instant proceeding seeking to stay arbitration and requested a hearing on the issue of whether the Weldon vehicle was in fact uninsured at the time of the accident. Aside from McClellan, the petition also named as respondents Weldon, its president Vernon Moore, and Central State Insurance Company (hereinafter Central), which was alleged to be Weldon's insurer at the time of the accident.

At the hearing held at its request, Liberty introduced two documents indicating that on the day of the accident Central was the insurer of record of the vehicle owned by Weldon. In response, Central called as a witness one of its officers who testified that on March 14, 1983, she had mailed a letter of cancellation to Weldon canceling its policy effective April 4, 1983—five days prior to the accident—for nonpayment of premiums. According to the witness, thereafter, on April 22, 1983, Weldon's president, Vernon Moore, appeared in her office to request reinstatement of the policy, and provided her with his affidavit in which he averred, in pertinent part, that "[t]his is to certify that none of the vehicles named in the above mentioned policy [including the vehicle in question] have been involved in any accident since April 4, 1982 *[sic]* to the above date". Acting in reliance upon this affidavit, Central reinstated Weldon's policy retroactively to April 4, 1983. The witness stated that had Moore revealed the April 9, 1983 accident, the policy would not have been reinstated.

The witness also testified that when issuing an insurance policy, Central's practice was to check the applicant's driving history with the Department of Motor Vehicles. While she admitted that no such check had been made in connection with Weldon's application for reinstatement of its policy, she indicated that even if a check had been made on April 22, 1983, it was highly unlikely that it would have revealed the existence of the accident on April 9, 1983, since it normally takes about 30 days for such accident information to appear in the records of the Department of Motor Vehicles. It was Central's contention, however, that based upon its prior relationship with Moore, his prior good driving record, and the fact that cancellation was only for economic reasons, it consid-

ered him a good insurance risk and acted reasonably in relying upon his affidavit without investigating its content. Central first learned of the April 9, 1983 accident in July 1983 from McClellan's attorney and in September 1983, following an investigation, it canceled Weldon's policy retroactively to April 4, 1983.

Special Term found that Moore's affidavit constituted a material misrepresentation made to induce Central to reinstate the policy. and that it was therefore entitled to cancel the reinstated policy. Thus, the court concluded that on April 9, 1983, the vehicle owned by Weldon was uninsured, and permitted the arbitration to proceed.

We reverse.

We do not disagree with Special Term's finding that Moore's misrepresentation as to whether the vehicle had been involved in any accidents during the period prior to the request for reinstatement of the policy constituted a material misrepresentation sufficient to permit Central to cancel the policy (Insurance Law § 3105). We do, however, disagree with the conclusion implicit in Special Term's decision that such cancellation could be made retroactively.

Vehicle and Traffic Law § 313, which is part of the Motor Vehicle Financial Security Act, provides in part that: "No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination by regular mail". It has long been recognized that this provision supplants an insurance carrier's common-law right to cancel a contract of insurance retroactively on the grounds of fraud or misrepresentation, and mandates that the cancellation of a contract pursuant to its provisions may only be effected prospectively *(Teeter v Allstate Ins. Co.,* 9 AD2d 176, *affd* 9 NY2d 655; *see also, Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359; *Olivio v Government Employees Ins. Co.,* 46 AD2d 437; *Reliance Ins. Co. v Daly,* 38 AD2d 715). This rule is founded upon the strong public policy behind the compulsory automobile insurance scheme "to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage" *(Teeter v Allstate Ins. Co., supra,* at 180). This policy is based upon the recognition that compulsory automobile liability insurance "is not the concern solely of the insured and his insurer" *(Aetna Cas. & Sur. Co. v O'Connor, supra,* at 364) but exists also for the protection of

the public *(Olivio v Government Employees Ins. Co., supra)*. By allowing only prospective cancellation of an automobile liability insurance contract, the statute places upon the insurer the burden of discovering any fraud before issuing a policy, or at the earliest possible moment thereafter, and prevents interference with the rights of third parties who may have been injured as a result of the negligence of the insured during the term of the contract.

Central argues that an exception to the rule against retroactive cancellation should be recognized in this case where its act of reinstating Weldon's policy as of a date prior to the occurrence of the accident did not in any way contribute to the keeping of an uninsured motorist on the road during the period when the insurance had elapsed. We do not agree. Central elected to provide Weldon with continuous coverage extending retroactively through the period following cancellation of the original policy, during which period the accident had occurred. If it had sought to protect itself against possible accidents which might have occurred during that period it could have simply issued the policy prospectively. Indeed, the very fact that Weldon was seeking retroactive protection should have alerted Central to the fact that a more thorough investigation was in order. We see no reason to burden another insurance carrier with liability for any incident which occurred during a period for which Central freely elected to provide coverage. The objectives of the compulsory automobile insurance scheme to assure continuous coverage would not be served by carving out such an exception to the rule against retroactive cancellation of insurance contracts so that coverage would be shifted to the carrier of an innocent third party, solely to relieve the initial carrier from its own imprudent acts and failure to thoroughly investigate. Central, having issued a policy covering the period in question, should be held responsible for any accidents occurring during that period. There is no question but that Central had the right to cancel Weldon's policy prospectively, but until that cancellation was effective, it remained responsible. As the court in *Teeter v Allstate Ins. Co. (supra,* at 183) noted, "[t]he Legislature has chosen to protect the public * * * by forbidding retroactive recession *in toto"* and we do not perceive any basis in this case which would justify a departure from that rule.

We would note that our holding in no way prevents Central from seeking redress against its insured for any losses incurred as a result of its misrepresentation *(see, Reliance Ins.*

*Co. v Daly,* 38 AD2d 715, *supra).* Brown, J. P., Lawrence, Kooper and Spatt, JJ., concur.