[713 NYS2d 214]

In the Matter of Insurance Company of North America, Respondent, v Lenny Kaplun, Appellant.

Second Department, September 18, 2000

APPEARANCES OF COUNSEL

*Solomon Rosengarten*, Brooklyn, for appellant.

*Ahmuty, Demers & McManus,* Albertson (*Frederick B. Simpson* and *Brendan T. Fitzpatrick* of counsel), for respondent.

O'BRIEN, J. P.

The issue raised in this appeal is whether the Supreme Court properly stayed arbitration of a claim for uninsured motorist benefits where the claimant participated in a fraudulent scheme to obtain the insurance policy. Although the Supreme Court erred in determining that the policy was void *ab initio*, we conclude that the stay was nevertheless properly granted.

On May 24, 1995, the appellant, Lenny Kaplun, was driving a 1989 BMW automobile in Connecticut when the car hit a guardrail and went down an embankment. The passenger in the car was ejected. Following an investigation, a Connecticut State Trooper concluded that immediately prior to the accident Kaplun was driving an estimated 75 miles per hour in a 55 miles per hour zone. Kaplun was issued a ticket for failing to drive in the established lane and traveling unreasonably fast. The record does not reveal the extent of Kaplun's injuries or those of his passenger.

According to the State Trooper's report, the registered owner of the BMW was Olga Aldochkina of Newburgh, New York. The BMW was included as a vehicle on an insurance policy which was issued by the petitioner Insurance Company of North America (hereinafter INA) to Aldochkina on November 9, 1994, as an assigned risk under the New York Automobile Insurance Plan (*see*, Insurance Law article 53). The policy provided limits of $10,000 per person and $20,000 per accident. Aldochkina was the only person named as an insured on the policy.

Kaplun's application for no-fault benefits under the policy was denied by INA and the denial of that application is not at issue on this appeal. In 1997 Kaplun demanded arbitration of his claim for "hit and run" benefits under the policy. In June 1995, in a statement to an INA investigator shortly after the accident, Kaplun claimed that a small yellow car caused him to swerve off the road.

INA commenced this proceeding to permanently stay arbitration of Kaplun's claim on the ground that the policy was void *ab initio* due to Kaplun's participation in a fraudulent scheme to obtain the policy. In support of its petition, INA relied in part on statements made by Kaplun and Aldochkina to its investigator in connection with Kaplun's earlier claim for no-fault benefits. In July 1995 Aldochkina told the investigator that the BMW was actually owned by Kaplun who requested

that she insure the car because she was over 25 years old and lived in Orange County where the insurance would be less expensive. According to Aldochkina, Kaplun purchased the BMW in Newburgh and she did not contribute to the purchase price. Kaplun provided a Brooklyn address in his signed statement to the INA investigator in June 1995. He admitted that he purchased the car and that he caused the car to be registered in Aldochkina's name. Similarly, in an examination under oath in connection with his claim for no-fault benefits, Kaplun denied that Aldochkina contributed any funds towards the purchase of the car. INA also produced the certificate of title which listed Aldochkina as the owner of the BMW.

Kaplun and Aldochkina submitted nearly identical affidavits in opposition to the petition for a stay of arbitration in which they claimed that the information in their statements to the INA investigator was inaccurate, because they had difficulty reading English, and, in fact, they jointly owned the BMW. The Supreme Court directed a hearing on the petition.

At the hearing, Kaplun testified that Aldochkina contributed over $7,000 towards the $18,000 purchase price of the BMW and that they jointly owned it. Although he had referred to Aldochkina as his cousin in his statement to the INA investigator, he testified that she was actually the former wife of a friend, and he no longer knew her whereabouts. Kaplun claimed that he spent "a lot" of time in Newburgh and that the car was "usually" kept there, however, his driver's license listed a Brooklyn address. His testimony revealed that, during the relevant time period, he drove the car while he lived, worked, and attended college in Brooklyn.

The testimony of Aldochkina's insurance agent revealed that Kaplun accompanied Aldochkina when she completed the application to add the BMW to her existing policy, that Aldochkina was the only insured named on the policy, and that Kaplun was not listed as an additional driver. The agent was allowed to assume that the car would be garaged in Newburgh where Aldochkina lived. The hearing also included testimony from the INA investigator who previously interviewed Kaplun and from two witnesses who corroborated Kaplun's testimony that Aldochkina was present when the BMW was purchased and that she occasionally drove it.

The Supreme Court found the testimony of Kaplun and his witnesses to be "sophomoric and incredible," and concluded that Kaplun and Aldochkina concealed material facts from the insurance agent and INA, i.e., that Kaplun was the owner of

the car, that he was the principal, if not the only, driver, and the car was garaged in Brooklyn. The purpose of these misrepresentations was to pay lower insurance premiums. The Supreme Court found that the policy was void *ab initio*, and it permanently stayed arbitration of Kaplun's claim for uninsured motorist benefits.

Kaplun does not dispute, for purposes of this appeal, the Supreme Court's determination that he and Aldochkina concealed the true facts regarding the ownership of the BMW from INA. He contends, however, that it was error to declare the policy void *ab initio* because INA failed to offer any proof that the policy was cancelled in compliance with Vehicle and Traffic Law § 313 prior to the accident. The policy could not be cancelled retroactively, despite any misrepresentations that were made in procuring the policy, and therefore the court erred in granting a stay of arbitration of his uninsured motorist claim.

█ Initially, this argument may be raised for the first time on appeal because it presents an issue of law which appears on the face of the record and which could not have been avoided if raised at the proper juncture (*see, Matter of Matarrese v New York City Health & Hosps. Corp.,* 247 AD2d 475, 476). The INA petition was premised on the fact that the policy covering the BMW was in effect at the time of the accident, and it never alleged that the policy had been cancelled prior to the accident. Rather, INA contended that the policy was void from its inception.

Vehicle and Traffic Law § 313 provides, in relevant part: "(1) (a) No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination by regular mail, * * * except where the cancellation is for non-payment of premium in which case fifteen days notice of cancellation by the insurer shall be sufficient." Vehicle and Traffic Law § 313 applies to the cancellation of a policy issued under the assigned risk plan as well (*see,* Rules of New York Automobile Insurance Plan § 18 [2]).

█ INA relies on the general rule that a policy of insurance will be voided if the insured fraudulently concealed a material fact in applying for the insurance coverage (*see, Sun Ins. Co. v Hercules Sec. Unlimited,* 195 AD2d 24). However, it is well settled that Vehicle and Traffic Law § 313 "supplants an insur-

ance carrier's common-law right to cancel a contract of insurance retroactively on the grounds of fraud or misrepresentation, and mandates that the cancellation of a contract pursuant to its provisions may only be effected prospectively" (*Matter of Liberty Mut. Ins. Co. v McClellan,* 127 AD2d 767, 769; *see also, DiDonna v State Farm Mut. Auto. Ins. Co.,* 259 AD2d 727; *A-Drive Corp. v General Acc. Group,* 114 AD2d 430; *Pilato v Nassau Ins. Co.,* 79 AD2d 971; *Teeter v Allstate Ins. Co.,* 9 AD2d 176, *affd* 9 NY2d 655). Similarly, a policy issued under the assigned risk plan may only be cancelled prospectively (*see, Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359).

Vehicle and Traffic Law § 313 places the burden on the insurer to discover any fraud before issuing the policy, or as soon as possible thereafter, and protects innocent third parties who may be injured due to the insured's negligence (*see, Aetna Cas. & Sur. Co. v O'Connor, supra; Matter of Liberty Mut. Ins. Co. v McClellan, supra; Olivio v Government Empls. Ins. Co.,* 46 AD2d 437). Since INA never claimed that it cancelled the policy in compliance with Vehicle and Traffic Law § 313 prior to the accident, the policy remained in effect (*see, Matter of Paramount Ins. Co. v Moctezuma,* 201 AD2d 652). INA is responsible to any innocent third parties injured in the accident, despite the proof adduced at the hearing that Kaplun and Aldochkina obtained the policy by misrepresentations.

■ Although it was error for the Supreme Court to hold that the policy was void *ab initio,* the issue that remains to be decided is whether INA may nevertheless deny benefits to Kaplun on the ground that he was a participant in the fraud. We conclude that it may.

An insurance carrier that is precluded from rescinding a policy retroactively due to fraud is not without means of redress. For example, if the insurer is required to pay benefits under the policy to a third party, it may bring an action against its insured to recover such losses (*see, Reliance Ins. Co. v Daly,* 38 AD2d 715; *see also, Matter of Liberty Mut. Ins. Co. v McClellan, supra*). In *Reliance Ins. Co. v Daly (supra),* this Court refused to allow the insurance carrier to rescind the policy because of the misrepresentations of its insured, but concluded that "nothing in the applicable law precludes a suit for damages after the insurer's responsibilities to a third party have been satisfied" (38 AD2d, at 716).

When the insured brings an action to recover benefits under a policy, the insurance carrier may assert as an affirmative defense that the insured's misrepresentations and/or fraud in

obtaining the policy precludes any recovery by the insured (*see, DiDonna v State Farm Mut. Auto. Ins. Co., supra; Mooney v Nationwide Mut. Ins. Co.,* 172 AD2d 144). "Just as the public interest is not disserved by a suit brought by the insurer against its insured who fraudulently procured the policy, neither is it disadvantaged if the insurer is relieved of a claim asserted against it by such an insured. If it is established, as defendant here affirmatively alleges, that plaintiff acquired his policy by fraudulent means, denying plaintiff the right to recover would not impinge in any way upon the protection the policy accords innocent victims, would not subvert the statutory proscription against retroactive cancellation and would comport with elementary fairness" (*Mooney v Nationwide Mut. Ins. Co., supra,* at 149). Similarily, where the right to coverage is asserted in a declaratory judgment action by the insured, the insurance carrier may defend on the ground that the insured was a participant in the fraudulent issuance of the policy (*see, Taradena v Nationwide Mut. Ins. Co.,* 239 AD2d 876; *Travelers Indem. Co. v Avelino,* 191 AD2d 229; *cf., Eagle Ins. Co. v Liberty Mut. Ins. Co.,* 267 AD2d 347).

As INA would be permitted to raise the claim of fraud in the procurement of the policy as a defense in an action brought by Kaplun to recover benefits under the policy, INA is not precluded from seeking a permanent stay of arbitration on the ground that Kaplun's participation in the fraud bars his recovery of benefits under the policy. Based on the evidence adduced at the hearing, the Supreme Court properly granted the petition to permanently stay arbitration. Although the registration and title of the BMW were in Aldochkina's name, and the policy was issued to her, Kaplun was not an innocent third party that Vehicle and Traffic Law § 313 is intended to protect. He clearly participated in a fraudulent scheme to obtain an insurance policy for his own car.

Finally, although Kaplun does not dispute that he and Aldochkina made certain misrepresentations to obtain the insurance policy, he contends that the misrepresentations were not material, and consequently do not warrant denying him the right to recover benefits under the policy. The issue of whether the subject misrepresentations were "material" as defined by Insurance Law § 3105 (b) is raised for the first time on appeal. Since proof might have been offered by INA to overcome Kaplun's contention if the issue had been raised in the Supreme Court, the issue is not properly before this Court on appeal (*see, Matter of Matarrese v New York City Health &*

*Hosps. Corp., supra; Gross v Aetna Cas. & Sur. Co.,* 240 AD2d 468; *Fresh Pond Rd. Assocs. v Estate of Schacht,* 120 AD2d 561). In any event, we conclude that it is apparent that the misrepresentations were "material" (*see*, Insurance Law § 3105 [b]) as INA clearly would not have issued a policy to Aldochkina covering the BMW had it known that she did not own the car (*cf., DiDonna v State Farm Mut. Auto. Ins. Co., supra*).

Accordingly, the order and judgment is affirmed.

THOMPSON, S. MILLER and H. MILLER, JJ., concur.

Ordered that the order and judgment is affirmed, with costs.

# MEMORANDA

OF

*DECISIONS RENDERED DURING THIS PERIOD EMBRACED IN THIS VOLUME*