[717 NYS2d 351]

In the Matter of EAGLE INSURANCE COMPANY, Respondent, v
FRANCIS M. SINGLETARY et al., Respondents, and INTEGON
INSURANCE COMPANY, Appellant.

Second Department, December 18, 2000

## APPEARANCES OF COUNSEL

*Finder & Cuomo, L. L. P.,* New York City (*Matthew A. Cuomo* of counsel), for additional appellant.

*Samuel K. Rubin,* Bethpage (*Lawrence R. Miles* of counsel), for respondent.

## OPINION OF THE COURT

RITTER, J. P.

We are asked to determine the validity of a retroactive cancellation of a policy of automobile insurance issued in the State of Virginia by the appellant, Integon Insurance Company (hereinafter Integon). The retroactive cancellation, while permitted under Virginia law, is not permitted under New York law. Resolving the conflict of law question presented in favor of applying the law of Virginia, we find that the retroactive cancellation was valid.

Francis M. Singletary was allegedly injured in New York State when a vehicle in which he was a passenger was struck from the rear by a vehicle owned by Naser Hashem Suleiman and driven by Talat F. Zaza. At the time, Singletary's vehicle was insured by the petitioner Eagle Insurance Company (hereinafter Eagle), and the Suleiman vehicle was insured by Integon. After learning that Integon had denied coverage for the accident, Singletary made a claim for uninsured motorist benefits under his policy with Eagle, and demanded arbitration. Eagle thereafter commenced this proceeding to permanently stay arbitration and to add Integon as an additional respondent. Eagle argued that the accident did not involve an uninsured motorist because, *inter alia,* the policy issued by Integon to Suleiman provided coverage for the accident. Integon did not dispute that it had issued a policy to Suleiman that was in effect at the time of the accident. Rather, Integon argued that it had properly cancelled the policy retroactively under Virginia law after it discovered that Suleiman made material misrepresentations in his application for insurance. In his application, Suleiman represented that he resided in Virginia

and that the subject vehicle would be principally garaged in Virginia. However, an investigation by Integon after the claim revealed that Suleiman resided and garaged his vehicle in New York at all relevant times. In an affidavit in opposition to Eagle's petition, Integon averred that had it known the true facts, it would not have issued the policy to Suleiman. Eagle, while not disputing Integon's representations as to the facts, or as to the law of Virginia, argued, *inter alia,* that given New York's governmental interest in protecting innocent accident victims against negligent and uninsured motorists, the law of New York should be applied. Thus, Eagle argued, because New York does not permit the retroactive cancellation of an automobile insurance policy, the cancellation of the Suleiman policy by Integon was invalid. By order dated August 4, 1999, the Supreme Court resolved the conflict of law question in favor of applying the law of New York, found that Integon's cancellation of the subject policy was invalid, and, *inter alia,* granted that branch of the petition which was to add Integon as an additional respondent. We reverse.

There is no dispute that there is a conflict between the law of New York and the law of Virginia (*see, Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.],* 81 NY2d 219). Under Virginia law, a policy of insurance may be cancelled retroactively if it was secured by a misrepresentation that was "material to the risk when assumed" (Va Code Annot § 38.2-309; *see, Utica Mut. Ins. Co. v National Indem. Co.,* 210 Va 769, 173 SE2d 855; *State Farm Mut. Auto. Ins. Co. v Butler,* 203 Va 575, 125 SE2d 823). New York law does not allow retroactive cancellation (*see,* Vehicle and Traffic Law § 313; *Matter of Insurance Co. v Kaplun,* 274 AD2d 293; *Olivio v Government Empls. Ins. Co.,* 46 AD2d 437). This conflict of law, although arising in the context of a motor vehicle accident, must be resolved by the conflict of law rules relevant to contracts, not torts (*see, Zurich Ins. Co. v Shearson Lehman Hutton,* 84 NY2d 309; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra*).

Traditionally, conflict of law questions relating to contracts were resolved by application of the law of the jurisdiction where the contract was made or was to be performed (*see, Zurich Ins. Co. v Shearson Lehman Hutton, supra; Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra*). Currently, the courts apply the more flexible "center of gravity" or "grouping of contacts" inquiry, which permits consideration of the "spectrum of significant contacts" in order to determine which State

has the most significant contacts to the particular contract dispute (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra,* at 226 [internal quotations omitted]; *see, Madison Realty v Neiss,* 253 AD2d 482). Traditional choice of law factors are to be given "heavy weight" in a grouping of contacts analysis (*Haag v Barnes,* 9 NY2d 554, 560; *see also, Madison Realty v Neiss, supra; Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra,* at 226). In general, significant contacts in a case involving contracts, in addition to the place of contracting, are the place of negotiation and performance, the location of the subject matter of the contract, and the domicile or place of business of the contracting parties (*see, Zurich Ins. Co. v Shearson Lehman Hutton, supra; Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra*; Restatement [Second] of Conflict of Laws § 188 [2]). As to insurance contracts specifically, significance has been attached to the " 'local law of the state which the parties understood was to be the principal location of the insured risk * * * unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 [of the Restatement] to the transaction and the parties' " (*Zurich Ins. Co. v Shearson Lehman Hutton, supra,* at 318, quoting Restatement [Second] of Conflict of Laws § 193). In the case of a noncommercial vehicle, which is by its nature mobile, the principal location of the insured risk is the place where the vehicle is to be principally garaged (*see,* Restatement [Second] of Conflict of Laws § 193, comment *c*). Here, the insurance contract at issue, which was written to conform to Virginia law, was obtained in Virginia, from an insurance company doing business in Virginia, by a party (Suleiman) who represented that he was a resident of Virginia and that the insured vehicle would be principally garaged in Virginia. Applying the grouping of contacts inquiry to these facts, Virginia clearly had the most significant contacts with the parties and the contract. The fact that Suleiman misrepresented his residence and the place where the vehicle was to be principally garaged did not operate to give New York any legitimate contact with the contract. Thus, the validity of the making and cancellation of the contract must be determined under Virginia law. This conclusion is consonant with the legitimate and reasonable expectations of the contracting parties.

Further, on the facts presented, this conclusion is not altered by inquiry into the respective governmental interests implicated. The grouping of contacts inquiry is the "primary analytical tool" to be used in resolving conflict of law issues relating

to contracts (*Zurich Ins. Co. v Shearson Lehman Hutton, supra,* at 319). However, when "the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests," those governmental interests may be considered (*Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], supra,* at 226). This does not, however, transform the "analytical paradigm" of the grouping of contacts approach into the "interest analysis" approach to conflict of law questions used in tort cases (*Zurich Ins. Co. v Shearson Lehman Hutton, supra,* at 319). Here, New York enacted Vehicle and Traffic Law § 313, which prohibits the retroactive cancellation of an insurance policy, in order to place the burden on the insurer to discover grounds for cancelling a policy prior to the intervention of the rights of innocent third parties (*see, Matter of Insurance Co. v Kaplun, supra; Olivio v Government Empls. Ins. Co., supra*). Thus, New York has expressed a governmental interest in protecting innocent third parties from being deprived of insurance coverage when injured by a negligent motorist. Here, however, such a scenario is not presented, in that the alleged innocent third party (Singletary) does not appear to be without coverage. Rather, there is the potential for coverage through the insurer of the alleged negligent driver (Zaza). Moreover, Singletary has also made a claim under his own policy with Eagle for uninsured motorist coverage, one method by which New York requires insurers issuing policies within the State to offer some protection against the circumstances presented (*see, American Centennial Ins. Co. v Sinkler,* 903 F Supp 408, 414-415). In sum, on the facts presented, New York's governmental interests, when balanced against Virginia's significant contacts with the contract and legitimate governmental interest in protecting its honest policyholders from bearing the burden of paying claims incurred by dishonest policyholders, is not sufficiently compelling to warrant the application of New York law (*see, American Centennial Ins. Co. v Sinkler, supra*). Thus, the application of Virginia law is proper and, as Eagle has not otherwise challenged the validity of Integon's retroactive cancellation of Suleiman's policy, the Supreme Court should not have added Integon to this proceeding as an additional respondent. Accordingly, the order dated August 4, 1999 is reversed insofar as appealed from, with costs, and that branch of the petition which was to add Integon as an additional respondent is denied. The appeal from the order entered October 6, 1999 must be dismissed as no appeal lies from an order denying reargument.

FLORIO, H. MILLER and FEUERSTEIN, JJ., concur.

Ordered that the appeal from the order entered October 6, 1999 is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated August 4, 1999 is reversed insofar as appealed from, and that branch of the petition which was to add Integon Insurance Company as an additional respondent is denied; and it is further,

Ordered that the appellant is awarded one bill of costs.