[793 NYS2d 548]

In the Matter of the Claim of JESUS CRUZ, Respondent, v NEW MILLENNIUM CONSTRUCTION & RESTORATION CORPORATION et al., Respondents, and REALM NATIONAL INSURANCE COMPANY, Appellant. WORKERS' COMPENSATION BOARD, Respondent. (And 13 Other Related Claims.)

Third Judicial Department, March 24, 2005

## APPEARANCES OF COUNSEL

*Stroock & Stroock & Lavan L.L.P.*, New York City (*Hugh O'Boyle of Foley, Smit, O'Boyle & Weisman* of counsel), for appellant.

*Eliot Spitzer, Attorney General*, New York City (*Steven Segall* of counsel), for Workers' Compensation Board, respondent.

## OPINION OF THE COURT

CARPINELLO, J.

On October 24, 2001, 12 of the 14 claimants at issue in these consolidated proceedings and the deceased spouses of the remaining two claimants were employed by New Millennium Construction & Restoration Corporation, a subcontractor on a building reconstruction project in New York City. Each was injured or died when an exterior scaffold collapsed. Claimants thereafter sought workers' compensation benefits pursuant to a policy that had been issued to New Millennium on August 31, 2001 by Realm National Insurance Company.

After Realm's investigation into the accident revealed that New Millennium had misrepresented the scope of its work on its application for coverage, Realm notified New Millennium by letter dated November 19, 2001 that it was rescinding the policy pursuant to Insurance Law § 3105 (b).[1] It also commenced a declaratory judgment action in Supreme Court, Queens County, seeking a declaration that the policy was void ab initio pursuant to this same statutory provision. New Millennium defaulted in that action and a judgment was entered declaring the subject policy void ab initio.

In each of the workers' compensation proceedings before us, Realm unsuccessfully asserted that it had no obligation to any claimant because the policy issued to New Millennium was properly declared void ab initio. Ultimately, the Workers' Compensation Board determined that Insurance Law § 3105 (b) could not be used by Realm to circumvent the workers' compensation statutory scheme pertaining to cancellation of

---

1. New Millennium had indicated on its application that its work consisted of "50% wallboard, 25% int[erior] carp[entry], [and] 25% int[erior] paint." No mention was made of exterior work.

policies. Stripped to their essentials, these appeals by Realm concern whether a workers' compensation carrier can declare a workers' compensation policy as void ab initio under Insurance Law § 3105 (b) or whether Workers' Compensation Law § 54 (5) abrogates such right. We conclude that the Board's decisions should be affirmed.

First, as no claimant, the Board, the State Insurance Fund nor the Uninsured Employees' Fund was a party to the prior declaratory judgment action or in privity with any party to that action, that judgment cannot have collateral estoppel or res judicata effect on them (see D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664-665 [1990]). Next, we are compelled to note that the precise question of whether Workers' Compensation Law § 54 (5) abrogates an insurer's right to declare a workers' compensation policy as void ab initio under Insurance Law § 3105 has never been considered by this Court or any other state court (but see Royal Ins. Co. v La Pietra Contr. Corp., 1997 WL 37048, 1997 US Dist LEXIS 24099 [ED NY, Nickerson, J., Jan. 17, 1997]). In now considering it, we conclude that the doctrine of void ab initio, or retroactive cancellation, under Insurance Law § 3105 (b) is incompatible with Workers' Compensation Law § 54 (5) such that the subject policy was in effect on the day of the accident (but see id.).

We begin first with a brief discussion of Insurance Law § 3105. As a general rule, an insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to enter into the contract and the misrepresentation was material (see Insurance Law § 3105 [a], [b]). Thus here, Realm contends that New Millennium made a material misrepresentation when it omitted information that it performs exterior construction work on its application (see n 1, supra). Realm further contends that it would not have issued a workers' compensation policy to New Millennium had it known such fact (see Insurance Law § 3105 [b]; see also Zilkha v Mutual Life Ins. Co. of N.Y., 287 AD2d 713 [2001]). To be sure, Insurance Law § 3105 has been successfully invoked to rescind policies providing disability coverage (see e.g. Belesi v Connecticut Mut. Life Ins. Co., 272 AD2d 353 [2000], lv dismissed 95 NY2d 886 [2000]; Carpinone v Mutual of Omaha Ins. Co., 265 AD2d 752 [1999]), life insurance (see e.g. Hydell v North Atl. Life Ins. Co., 265 AD2d 528 [1999]), fire insurance (see e.g. Maski, Inc. v Walter Kaye, Inc., 245 AD2d 348 [1997]; Abulaynain v New York Merchant Bakers Mut. Fire Ins. Co., 128 AD2d 575 [1987]), marine open cargo

coverage (*see e.g. Supreme Import & Export Co. v Yasuda Fire & Mar. Ins. Co. of Am.*, 211 AD2d 598 [1995]), accidental death benefit coverage (*see Mercado v Allstate Life Ins. Co. of N.Y.*, 193 AD2d 476 [1993]) and health insurance benefits (*see New York Life Ins. Co. v Palmer*, 169 AD2d 823 [1991]; *Bloom v Mutual of Omaha Ins. Co.*, 161 AD2d 1047 [1990]).

In the arena of no fault insurance coverage, however, it is well settled that a policy cannot be cancelled retroactively under Insurance Law § 3105 (b) even if an insured has made misrepresentations in procuring it (*see e.g. Matter of Insurance Co. of N. Am. v Kaplun*, 274 AD2d 293 [2000]; *Matter of Liberty Mut. Ins. Co. v McClellan*, 127 AD2d 767 [1987]; *Teeter v Allstate Ins. Co.*, 9 AD2d 176 [1959], *affd* 9 NY2d 655 [1961]; *see also Aetna Cas. & Sur. Co. v O'Connor*, 8 NY2d 359 [1960] [no right to rescind an assigned risk automobile insurance policy ab initio]). Rather, it has been established that Vehicle and Traffic Law § 313 "supplants an insurance carrier's common-law right to cancel a contract of insurance retroactively on the grounds of fraud or misrepresentation, and mandates that the cancellation of a contract pursuant to its provisions may only be effected prospectively" (*Matter of Liberty Mut. Ins. Co. v McClellan, supra* at 769; *see DiDonna v State Farm Mut. Auto. Ins. Co.*, 259 AD2d 727 [1999]). In placing the burden on an insurer to discover any fraud either before issuing a policy or as soon as possible thereafter, Vehicle and Traffic Law § 313 "protects innocent third parties who may be injured due to the insured's negligence" (*Matter of Insurance Co. of N. Am. v Kaplun, supra* at 298). The same rationale applies here given the language of Workers' Compensation Law § 54 (5) itself and the policy behind the Workers' Compensation Law generally.

In our view, the language of Workers' Compensation Law § 54 (5), like Vehicle and Traffic Law § 313, "is comprehensive and all-embracing" (*Teeter v Allstate Ins. Co., supra* at 180). Entitled "Cancellation and termination of insurance contracts," it sets forth the specific mechanisms by which a carrier must cancel a contract of workers' compensation insurance "due to non-payment of premiums," or "any reason other than non-payment of premiums." No matter what the reason for cancellation, the statute requires that a written notice of cancellation, with the cancellation date specified in the notice, be filed with the Board's chair and served on the employer. Cancellation for nonpayment does not take effect until at least 10 days from such filing and service and cancellation for any other reason

does not take effect until at least 30 days thereafter (*see* Workers' Compensation Law § 54 [5]).[2] This broad language would include voiding a contract for fraud (*see Matter of Aioss v Sardo*, 223 App Div 201 [1928], *affd* 249 NY 270 [1928]) thereby making it impossible to have ab initio rescission (*see Matter of Passarelli v Columbia Eng'g & Contr. Co.*, 270 NY 68, 73 [1936] [a workers' compensation policy cannot be cancelled " 'flat' "]; *see also Teeter v Allstate Ins. Co.*, *supra*).

Furthermore, we find it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the public policy considerations underlying the compulsory workers' compensation statutory scheme (*see* Workers' Compensation Law §§ 10, 50), namely, to surely and swiftly compensate an injured employee or a dependent of a deceased employee (*see e.g. Crosby v State of N.Y., Workers' Compensation Bd.*, 57 NY2d 305, 313 [1982]; *Matter of Burns v Miller Constr.*, 55 NY2d 501, 508 [1982]; *O'Rourke v Long*, 41 NY2d 219, 222 [1976]). The serious potential adverse effects of retroactive cancellation on employees mandate exacting and strict compliance with the requirements for cancellation and termination under Workers' Compensation Law § 54 (5), even when such termination is based on fraud perpetrated by the employer (*see Matter of Aioss v Sardo, supra*).[3] This holding is consistent with the long-standing and oft-noted rule that " '[f]or obvious reasons of public policy underlying the very structure of the Work[ers'] Compensation Law a policy may only be cancelled in strict conformity with the statute' " (*Matter of Bogliolo v Advocate, Inc.*, 31 AD2d 855, 856 [1969], quoting *Matter of Horn v Malchoff*, 276 App Div 683, 685 [1950], *lv denied* 99 NYS2d 753 [1950]; *see Matter of Otterbein v Babor & Comeau Co.*, 272 NY 149, 154 [1936]; *Matter of Sutter v Albany Capitaland Enters.*,

---

**2.** As originally enacted (L 1913, ch 816), Workers' Compensation Law § 54 (5) provided for 10 days notice of cancellation regardless of the reason for such cancellation. In 1982, it was amended to its present form (L 1982, ch 335), with some subsequent amendments not relevant to the issue before us (*see* L 1992, ch 164; L 1985 ch 417). While the rationale behind the 1982 amendment delineating between cancellations for nonpayment and all other reasons was to benefit employers who had insurance cancelled through no fault of their own (which is not our case) (*see* Mem of State Dept of Labor, Workers' Compensation Bd, 1982 McKinney's Session Laws of NY, at 2472), the underpinning of the provision remained, that is, a legislative intent to preclude retroactive cancellation.

**3.** We are cognizant of Realm's argument that in these particular proceedings other sources of coverage are available to claimants. Notwithstanding this argument, our determination remains the same.

298 AD2d 639 [2002]; *Matter of Gregory v Hicksville Bicycle & Toyshop*, 84 AD2d 643 [1981]; *Matter of Conklin v Byram House Rest.*, 32 AD2d 582 [1969], *affd* 30 NY2d 657 [1972]; *see also Matter of Case v State Ins. Fund*, 72 NY2d 992, 993 [1988]; *Matter of Norwood v Icon Display Indus.*, 37 AD2d 877 [1971]).

Our holding is also consistent with this Court's decision in *Matter of Aioss v Sardo* (*supra* at 202), wherein we held that a workers' compensation policy, once issued, "became a direct obligation between the carrier and any injured employee of the insured" (*see Matter of Diaz v Ulster Vegetable Growers Co-op.*, 282 App Div 426, 431 [1953], *affd* 306 NY 859 [1954]). In expanding on this notion, we stated:

> "Whatever the rights may be between the carrier and the insured employer, so long as the policy, once it is issued, is outstanding, the carrier's liability to the injured employee remains. No question of warranties or of *false representations made by the employer in securing the policy* and no stipulations of the policy as between the employer and [the] carrier have force or effect as between the carrier and such an employee who was injured while the policy is outstanding" (*Matter of Aioss v Sardo, supra* at 203 [emphasis added]).

Thus, whether the action taken by a workers' compensation carrier upon the discovery of fraud is called a rescission or a cancellation, Workers' Compensation Law § 54 (5) and public policy mandate that it cannot be effective until at least 30 days after its mailing. As this was not done by Realm in this case, the policy issued to New Millennium was in effect on the date of claimants' accident.

To the extent not discussed, Realm's remaining contentions have been reviewed and found to be unpersuasive.

MERCURE, J.P., CREW III, ROSE and LAHTINEN, JJ., concur.

Ordered that the decisions are affirmed, without costs.