■ In the Matter of the Claim of PETER PALMINTERI, Respondent, v LEX FIRE PROTECTION CORPORATION et al., Respondents, and PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Appellant. WORKERS' COMPENSATION BOARD, Respondent. [803 NYS2d 726]—

Mercure, J.P. Appeal from a decision of the Workers' Compen-

sation Board, filed June 30, 2004, which ruled that the workers' compensation insurance policy issued by Public Service Mutual Insurance Company was in effect as of the date that claimant sustained an occupational disease.

The sole issue on this appeal is whether Public Service Mutual Insurance Company, the workers' compensation carrier for claimant's employer, validly canceled the employer's policy prior to claimant's injury. Contrary to the determination of the Workers' Compensation Board, we conclude that Public Service, as an insurer, was not required to comply with the procedures set forth in Banking Law § 576, which are applicable to premium finance agencies in canceling insurance policies.*

The employer, which has gone out of business, evidently entered into a premium finance agreement with Budget Installment Corporation, through which the employer arranged to finance its workers' compensation insurance policy. As relevant here, Banking Law § 576 requires that a premium finance agency provide an insured with "[n]ot less than [10] days written notice . . . of the intent of the premium finance agency to cancel the insurance contract" (Banking Law § 576 [1] [a]). Should the insured fail to correct the default, the agency may then cancel the policy (see Banking Law § 576 [1] [d]). The parties agree that Budget did not effectuate cancellation inasmuch as it did not provide notice until January 4, 1994 that the policy would be canceled on January 11, 1994, thereby failing to give the employer the requisite 10 days to rectify its default (cf. Matter of Trojcak v Valiant Millwrighting & Warehousing, Inc., 17 AD3d 880, 881 [2005]). Their dispute centers on whether Public Service's subsequent cancellation of the policy was effective notwithstanding Budget's failure to comply with the Banking Law.

In canceling a policy, a premium finance agency—unlike an insurer—"acts as the agent of the insured pursuant to a standard provision of such financing contracts which appoints the premium finance agency as the insured's attorney in fact" (Matter of ELRAC, Inc. v White, 299 AD2d 546, 547 [2002]). Premium finance agencies need not comply with the separate requirements for canceling insurance policies that are imposed upon insurers "given the detailed procedures specifically applicable to premium finance agencies" and the fact that "[t]he Legislature has indicated that the procedures to be followed in canceling a

---

* Inasmuch as the issue is one of pure statutory reading and analysis and does not depend on any special competence or expertise of the Board, its interpretation is not entitled to deference (see Matter of Gruber [New York City Dept. of Personnel—Sweeney], 89 NY2d 225, 231-232 [1996]).

policy differ for insurers and premium finance agencies," which act in different capacities in canceling policies (*Ward v Gresham,* 59 NY2d 878, 880 [1983]). Analogously, we conclude that Public Service, as an insurer canceling the policy on its own behalf, was subject to the " 'comprehensive and all-embracing' " requirements of Workers' Compensation Law § 54 (5) permitting cancellation by the insurer for various reasons (*Matter of Cruz v New Millennium Constr. & Restoration Corp.,* 17 AD3d 19, 22 [2005] [citation omitted]), rather than the provisions of Banking Law § 576 relating to cancellation by premium finance agencies upon an insured's default (*see Matter of ELRAC, Inc. v White, supra* at 547-548; *Matter of Bogliolo v Advocate, Inc.,* 31 AD2d 855, 856 [1969]).

The record indicates that Public Service canceled the policy for nonpayment. Under such circumstances, Workers' Compensation Law § 54 (5) permits an insurer to cancel a policy upon 10 days notice to both the Board and the employer (*see Matter of Cruz v New Millennium Constr. & Restoration Corp., supra* at 22). Unlike the notice requirements imposed upon premium finance agencies, Workers' Compensation Law § 54 (5) does not mandate that an insurer give the insured an opportunity to rectify the default. Thus, contrary to the Board's determination, *Budget's failure* to provide 10 days to rectify the default cannot support a finding that *Public Service* did not validly cancel the policy pursuant to Workers' Compensation Law § 54 (5) and this matter must be remitted for a determination of whether Public Service strictly complied with that section (*see generally Matter of Rue v Northeast Timber Erectors,* 289 AD2d 787, 788-789 [2001], *lv dismissed* 98 NY2d 671 [2002], *lv denied* 99 NY2d 503 [2002]). The parties' remaining arguments are either lacking in merit or have been rendered academic by our decision.

Peters, Spain, Mugglin and Rose, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.

