OPINION OF THE COURT
Heitler, J.
Order, entered February 25, 2008, reversed, without costs, and defendant’s motion for summary judgment dismissing the complaint is granted. The clerk is directed to enter judgment accordingly. Appeal from order, entered March 17, 2008, dismissed, without costs, as academic.
Although Vehicle and Traffic Law § 313 does not permit an insurer to cancel an automobile insurance policy retroactively on the grounds of fraud or misrepresentation (see Matter of Liberty Mut. Ins. Co. v McClellan, 127 AD2d 767, 769 [1987]), an insurer may assert misrepresentation or fraud as an affirmative defense in an action by an insured to recover benefits under the policy (see Matter of Insurance Co. of N. Am. v Kaplun, 274 AD2d 293, 298-299 [2000]; Matter of Liberty Mut. Ins. Co. v McClellan, 127 AD2d at 770). Here, defendant’s moving papers showed that when the insured-assignor applied for automobile insurance, she listed a Connecticut address as her place of residence and the location where the insured vehicle would be garaged; that two months later, the insured notified defendant that she had changed her address, listing a second Connecticut address as her place of residence; that when the insured renewed her policy, she again listed a Connecticut address as her place of residence; that the Connecticut address listed by the insured as her residence was a commercial store located in a strip mall; and that the insured, at all relevant time, actually resided in Brooklyn, New York. Defendant further demonstrated that the annual insurance premium of $1,236 paid by the insured was based on her representation that she resided in Connecticut, and that the annual premium for the same policy based on her Brooklyn address would have been $4,807. This evidence was sufficient to establish prima facie that the insured intentionally misrepresented her address in order to obtain in *32 surance at reduced premiums, and that the misrepresentation was material, since defendant would not have issued the policy under the same terms had it known that the insured resided in Brooklyn (see Matter of Insurance Co. of N. Am. v Kaplun, 274 AD2d at 299-300). Contrary to the motion court’s determination, defendant was not required to show that the insurance policy had actually been cancelled in order to establish a prima facie showing of entitlement to summary judgment based on its fraud/misrepresentation defense.
In opposition, plaintiffs, as assignees “standing] in the shoes” of their assignor (see Long Is. Radiology v Allstate Ins. Co., 36 AD3d 763, 765 [2007]), failed to submit any competent evidence sufficient to defeat summary judgment.
McKeon, EJ. (concurring). I wholeheartedly agree with Justice Heitler that the brazen act of a Brooklyn resident registering an automobile from a shopping mall in Connecticut for the sole purpose of obtaining a cheaper insurance premium is outright fraud, but write separately to express my concern that the practice of New Yorkers fraudulently registering motor vehicles in foreign states seems to be burgeoning, likely costing our state government, insurance companies and honest consumers significant sums in lost revenue and increased premiums and casting a pall over the integrity of automobile registry systems in New York and other states.
Some might argue that more persons travel greater distances to work in New York City and that the abundance of automobiles bearing Connecticut or Pennsylvania license plates can be explained as an increase in long distance commuters. But the trend is not limited to nearby states. Cars with license plates from states all along the east coast and sometimes beyond are a frequent sight in the metropolitan area. Granted, some might be tourists, but there is a justifiable and growing level of suspicion that many of these vehicles registered in other states are owned and operated by New Yorkers, connected to the state whose name appears on their license plates only through a dubious address and a desire to pay less for insurance coverage.
For sure, there are those, in these dire economic times, who might ask, “What’s the big deal?” In the minds of many, insurance companies charge too much for too little. Perhaps there are those who simply cannot afford to insure a vehicle in New York, yet need a car for work or personal necessity. True, theirs is a choice not motivated by ill gain, but by economic considerations. Whatever the reason, the reality remains that the spiral *33 ing cost of automobile insurance premiums in New York is directly linked to ever increasing instances of insurance fraud, a fact recognized by this State’s highest court (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]). Thus, the New Yorker deceitfully claiming to be a Pennsylvanian for purposes of registering a car might pay less, but the rest of us pay more. Soon, New Yorkers will pay higher fees to register their vehicles. Those of our neighbors who do so elsewhere will escape that cost and our State will be shortchanged much-needed revenue.
However, the sad truth is that this insidious brand of fraud produces consequences beyond higher fees and insurance premiums. What about the innocent family involved in an accident with one of these out-of-state registrants? Are they assured of a financially responsible source of compensation for physical injury or the death of a loved one, or must they deal with a “fly by night” local insurer, little regulated and beyond the jurisdictional reach of New York courts? What about the disclaimer jurisprudence in these foreign states? Will the innocent victim of the tortious wrong of a fraudulent out-of-state registrant still have the benefit of insurance once the fraud is discovered? The questions are myriad and the potential for harm to New Yorkers is real and significant.
Ready answers will not be found in courthouse writings, this included. That should not be our purpose, for regulatory and legislative matters are best left to others. Fortunately, there are gifted professionals in the remaining branches of government possessed of the experience and wisdom to address these issues. On the other hand, courts are not required to turn a blind eye to the gathering legal clouds about them. Indeed, this ordinary lawsuit involving the questionable registration of a car in a foreign state should serve to remind us that we “[w]rite not only for this case and this day alone” (Carroll v Lanza, 349 US 408, 413 [1955]), but for the future, ever mindful that a question asked is often as powerful as a question answered.
Heitler, J.; McKeon, EJ., concurs in a separate memorandum.