New York State Workers' Compensation Board, in its capacity as the governmental agency charged with the administration of the Workers' Compensation Law and attendant regulations, and in its capacity as the successor in interest to the ELITE CONTRACTORS TRUST OF NEW YORK, Plaintiff,

against
21st Century Construction Corp. et al., Defendants.


587-14

Michael Papa, Deputy General Counsel
New York State Workers' Compensation Board
Attorney for Plaintiff
(Michael Papa, Todd C. Roberts and Stephen Repsher, of counsel)
328 State Street
Schenectady, New York 12305
Budd Larner
Attorneys for Defendant KrisStone, LLC
(Randi-Lynn Smallheer, of counsel)
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Law & Law, PLLC
Attorneys for Defendant K. Nusbaum Inc.
(Robert T. Law, III, of counsel)
3 Atrium Drive, Suite 210
Albany, New York 12205
Lewandowski & Associates
Attorneys for Defendant Northland Contracting, Inc.
(Kimberly M. Thrun, of counsel)
721 Center Road
West Seneca, New York 14224
Anes, Friedman, Leventhal & Balistreri, PLLC
Attorneys for Defendants Rimco Air Conditioning Co., Inc. and Crystal Air Conditioning Corp. (Charles M. Balistreri, of counsel)
52 Duane Street, 7th Floor
New York, New York 10007 Law Office of James M. Brooks
Attorneys for Defendant Trombley Painting Corp.
(James M. Brooks, of counsel)
72 Olympic Drive
Lake Placid, New York 12946
Duke, Holzman, Photiadis & Gresens LLP
Attorneys for Defendant S. St. George Enterprises Contracting, Inc.
(Patricia Gillen, of counsel)
701 Seneca Street, Suite 750
Buffalo, New York 14202
The Galasso Law Firm
Attorneys for Defendants Lakestone Development, Inc. and Masters Edge, Inc.
(Christopher D. Galasso, of counsel)
17 Limestone Drive, Suite 2
Williamsville, New York 14221
Thorn Gershon Tymann and Bonanni, LLP
Attorneys for Defendant Don Rabideau Construction, LLC
(Erin Mead, of counsel)
5 Wembley Court, New Karner Road
P.O. Box 15054
Albany, New York 12212
Corbally, Gartland and Rappleyea, LLP
Attorneys for Defendants B-Dry Systems of Southern New York, Inc., Foundation Technology Inc. and No Diving Allowed, Inc. d/b/a/ Rainbow Pools & Construction, Co. (Kyle C. Van De Water, of counsel)
35 Market Street
Poughkeepsie, New York 12601 Bittiger Elias & Triolo P.C.
Attorneys for Defendants Apollo Restoration Inc., Blade Contracting Inc., Blade Concepts Inc. and Blade General Contracting Inc.
(Paul M. Elias and Priscilla J. Triolo, of counsel)
12 Route 17 North, Suite 206
Paramus, New Jersey 07652 Brennan & White LLP
Attorneys for Defendants Caleb M. Larue, Inc. and Hour Electric Company, Inc.
(William J. White, of counsel)
163 Haviland Road
Queensbury, New York 12804
Robert L. Arleo, Esq. P.C.
Attorney for Defendant Richard J. Rothe
380 Lexington Avenue, 17th Floor
New York, New York 10168
Law Offices of Gerald V. Dandeneau, P.C.
Attorneys for Defendant Amadeus Marble & Granite Co.
(Gerald V. Dandeneau, of counsel)
425 Broad Hollow Road, Suite 418
Melville, New York 11747
Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP
Attorneys for Defendant DAF Contracting Ltd.
(Jason L. Rothman, of counsel)
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
Barr Legal PLLC
Attorneys for Defendant Frank J. Tucek & Son, Inc.
(Harvey S. Barr, of counsel)
664 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Law Offices of Gustave J. DeTraglia, Jr.
Attorneys for Defendant Dean A. Calice Construction
(Gustave J. DeTraglia, Jr., of counsel)
1425 Genesee Street
Utica, New York 13501
Allison M. Kourbage, Esq. Attorney for Defendant Sweet Hollow Management Corp.
1 Schwab Road, Suite 7
Melville, New York 11747
Couch White, LLP
Attorneys for Defendants Bast Hatfield, Inc.; Mohawk Constructors, LLC; Kirchhoff Construction Management, Inc.; Iron Rentals, LLC; Cutting Edge Group, LLC; CEG Developers LLC; Ed Broidy, LLC; PII, LLC; Federated Fire Protection Systems Corp.; Federated Mechanical Corp.; Bervy Leasing Corp.; and George Lagonia Jr. Custom Carpentry, Inc. ("Bast Defendants")
(Donald J. Hillmann, of counsel)
540 Broadway
P.O. Box 2222
Albany, New York 12201
Wallace & Wallace, LLP
Attorneys for Defendants O'Donnell Development Corp., Forsons Realty Corp., MCD Development Corp., Craigco, LLC, Primary Construction LLC and Summerlin LLC ("O'Donnell Defendants")
(Kieran M. Lalor, of counsel)
85 Civic Center Plaza, Suite LL3
Poughkeepsie, New York 12601
The Law Offices of Eric R. Gee
Attorneys for FMI Masonry Corp.
(Eric R. Gee, of counsel)
PO Box 8806
Albany, New York 12208
Joseph G. Makowski, LLC
Attorneys for Defendants Action Residential Insulation, Inc.; Adam R. West Inc.; Advantage Flooring & Title, Inc.; Ayia LLC, f/k/a Aiya LLC; Bergen Tower II, Inc.; C & C Contractors, Inc.; C.I. Contracting Corp.; Calvin Maintenance, Inc.; Carrigan Drywall, Inc.; Castile Plumbing & Heating, Inc.; Conroy & Controy Contractors, Inc.; C.R.K. Contracting, Inc.; D & J Concrete Corp.; Doortec Architectural Metal & Glass, LLC; D. Teich Contracting Corp.; Dual Purpose Corporation; Gabby's Contracting Corp.; Harry Guidici & Son, Inc.; Inter County Contracting, Inc.; Interstate Heating, Inc.; Jaffer Electric, Inc.; John F. & John P. Wenzel Contractors, Inc.; Kane Contracting, Inc.; Kulback's Construction, Inc., f/k/a Kulback's & Associates, Inc.; Linaire Sheet Metal Corp.; M & T Plumbing & Heating Corp.; M. Early Plumbing & Heating Corp.; Mandon Building Systems, Inc.; MJS Construction Corp.; Nicholas Fruscello d/b/a Metro Fence; Northeast Petroleum Technologies, Inc.; Paul R. Christiana, individually and d/b/a Christiana Construction; Precision Carpentry of Westchester, Inc.; R.J. Painting, Inc.; Reddy Construction Company, Inc.; Regal Electric, Inc.; Reg-Ed Construction; Remco Maintenance LLC; Rite-Way Internal Removal, Inc.; R Way Carting, Inc.; R-W Cleaning & Carting Removal, Inc.; Sid Beebe & Sons Builders, Inc.; Stone Masters, Inc.; Three Brothers Electric, Inc.; Tim Gray Masonry Construction, Inc.; Trayner & Company, Ltd.; W5 Group LLC; Welch Construction, Wilkstone LLC; and William Blood
(Joseph G. Makowski, of counsel)
448 Delaware Avenue
Buffalo, New York 14202
Anthony DiPaolo, P.C.
Attorneys for Defendant Cipco Boarding Co., Inc.
(Anthony DiPaolo, of counsel)
235-07 Braddock Avenue
Queens Village, New York 11428
Giannasca & Shook, PLLC
Attorneys for Defendants Summit Construction Services Group, Inc.; Hull Construction & Restoration, Inc.; Soil Solutions, Inc.; Cherry Valley Builders, Inc.; and Soil Solutions of New York, Inc.
(Nathan Shook, of counsel)
220 Ferris Avenue
White Plains, New York 10603
Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendants Smith Bros. Concrete Contractors, Inc.; Wiser Home Remodeling Inc.; Hudson Valley Concrete Pumping, Inc.; Liebhaber Construction, Inc.; Brockway Mechanical Systems Inc.; Mountain Lake Electrical Inc.; Integrated Rigging & Contracting Inc.; Champlain Valley Building Services Inc.; Park Construction Corp.; and Douglas Paskor, Inc.
(Peter A. Lauricella, of counsel)
18 Corporate Woods Boulevard, Third Floor
Albany, New York 12211
Mark W. Greenfest, Esq.
Attorney for Huxley Construction Corp. and Huxley Contracting Corp. ("Huxley Defendants")
4029 Long Beach Road, Apt. 39
Island Park, New York 11558
McNamee Lochner P.C.
Attorneys for Defendant Alltek Energy Systems, Inc.
(Kevin Laurilliard, of counsel)
677 Broadway, P.O. Box 459
Albany, New York 12201-0459


Richard M. Platkin, J.

This is a collection action brought by the New York State Workers' Compensation Board ("WCB" or "Board") in its capacities as successor to the Elite Contractors Trust of New York ("ELITE" or "Trust")[FN1]
and as the governmental agency charged with the administration of the Workers' Compensation Law ("WCL") and attendant regulations. Defendants are alleged former members of the Trust. 
The Board moves for: (1) partial summary judgment pursuant to CPLR 3212 (e) on the issue of liability, seeking an order that the appearing, non-settling defendants are jointly and severally liable for the deficit of the Trust with respect to the years in which they were members; (2) entry of default judgments pursuant to CPLR 3215 against defendants who failed to answer the Board's verified complaint ("Complaint"); and (3) discontinuance of the action against certain other defendants pursuant to CPLR 3217 (b). Numerous defendants have opposed the Board's motion and/or cross-moved for the summary dismissal of the Complaint.
BACKGROUND
ELITE is a group self-insured trust ("GSIT") formed pursuant to WCL § 50 and attendant regulations. The Trust was comprised of employer-members within the construction industry that were required to provide workers' compensation insurance to their employees. ELITE was in active operation from approximately August 27, 1999 until July 16, 2008, with Compensation Risk Managers, LLC ("CRM") serving as the group administrator (see Papa Aff., ¶ 7; Woods Aff., ¶¶ 28, 39).
By letter dated January 27, 2010, the Board advised the trustees of ELITE ("Trustees") that it would assume administration of the Trust pursuant to 12 NYCRR 317.20 due to the Trust's inability to manage its substantial deficit (see Woods Aff., ¶¶ 40-41; Ex. I). After assuming administration on April 1, 2010, the Board retained the accounting firm of Lumsden & McCormick, LLP ("L & M") to conduct a forensic audit (see Papa Aff., ¶ 10). In a deficit reconstruction report for ELITE issued on or about December 15, 2010 ("2010 DR Report"), the Trust's cumulative deficit was determined to be in excess of $82 million (see Papa Aff., ¶ 11; Ex. A).
By letter dated January 31, 2011, the Board issued an assessment billing package to the former Trust members ("2011 Deficit Assessment") (see id., ¶ 12; Ex. B). In connection with the assessment, the Board sent a billing package to each former member with an invoice detailing the member's pro rata share of the Trust's deficit (see id.). 
The Board updated ELITE's cumulative deficit in or about December 2013 ("2013 Updated Deficit") to reflect, among other things, more recent claims information, updated actuarial projections, funds received from members pursuant to interim repayment agreements and the removal of certain liabilities. The 2013 Updated Deficit showed a cumulative deficit of about $57.6 million (see id., ¶ 14). 
By letter dated January 17, 2014, the Board informed members of the Trust's updated deficit and offered them the opportunity to enter into a final settlement agreement whereby members would be released from any further liability in exchange for payment of their pro rata [*2]share (see id., ¶ 15; Ex. C). 
Some former Trust members settled with the Board; others did not. The Board commenced this action against the nonsettling members by filing a summons with notice on January 31, 2014 (see Papa Aff., Ex. D) and an amended summons with notice on March 24, 2014 (see id., Ex. E). Certain defendants appeared and demanded a complaint, and the Board served a verified complaint dated May 30, 2014 ("Complaint") seeking to recover a cumulative deficit of about $36 million (see id., Ex. G).[FN2]

Some of the defendants named in the Complaint failed to respond to the amended summons with notice and/or entered into settlement agreements with the Board. The Board moved for default judgments against the non-appearing defendants and discontinuance of the action against the settling defendants. The Board's motion was granted in all respects by Order dated August 3, 2015 (see Papa Aff., Ex. H).[FN3]
As a result, there remained 177 defendants in the case, of which 168 had answered the Complaint ("Remaining Defendants") and nine had failed to appear ("Defaulting Defendants") (see Papa Aff., ¶ 23; Exs. I-K; Repsher Aff., ¶¶ 3-7). 
In its Complaint, the Board alleges that: defendants were employers required to provide workers' compensation coverage to their employees (see Compl., ¶ 2211); defendants satisfied this obligation through membership in the Trust (see id., ¶ 2218); defendants are jointly and severally liable for the Trust's deficit under (i) the WCL and attendant regulations and (ii) the Trust Agreement and the Joinder and Indemnification Agreements ("J & I Agreements") executed by members when they joined the Trust (see Compl., ¶¶ 2230-2246); and defendants are jointly and severally liable for the deficits associated with their period of membership, notwithstanding cancellation or termination of such membership (see id., ¶¶ 2240-2246). The Complaint alleges two causes of action: (1) recovery of ELITE's deficit on a joint and several basis, together with statutory interest (see id., ¶¶ 2268-2273); and (2) recovery of collection fees under State Finance Law § 18 (3) and (5) (see id., ¶¶ 2274-2275). 
The Board now moves for partial summary judgment against the Remaining Defendants on the first cause of action solely as to the issue of liability. Specifically, the Board seeks an order determining that each of the Remaining Defendants is jointly and severally liable for the Trust's cumulative deficit with respect to each year (or portion thereof) that the defendant was a member of the Trust. The Board also seeks entry of default judgments against the Defaulting Defendants based upon their failure to serve answers to the Complaint. Finally, the Board moves to discontinue the case against certain defendants.[FN4]

The principal arguments and contentions raised by the Remaining Defendants in opposition to the Board's motion and/or in support of the cross motions seeking dismissal of the Complaint can be summarized as follows: (a) the Board's moving papers are insufficient to discharge its prima facie burden; (b) there are disputed issues of fact as to whether ELITE was validly formed as a GSIT; (c) WCL § 50 (3-a) (3), in effect from January 1, 2001 until June 30, 2008, did not impose joint and several liability on GSIT members, and the amended statute should not be accorded retroactive effect; (d) the 2008 amendments to WCL § 50 (3-a) constitute an unconstitutional taking of private property; (e) the Board's claims are barred by expiration of the statute of limitations; (f) the deficit assessment sued upon by the Board is invalid because it was issued beyond the 120-day period required by WCL § 50 (3-a) (7) (b), and the 2015 amendments to the statute should not be given retroactive effect; (g) summary judgment is premature because discovery is necessary as to the Board's oversight of the Trust and CRM's administration thereof; (h) the wrongdoing of CRM and the Board preclude the Board from maintaining this lawsuit; (i) the Trust's deficit improperly has been apportioned to defendants without regard to their actual loss history; (j) an accounting of ELITE should be ordered; (k) the Board's purchase of the ALP removes liability from the defendant-members; and (l) certain defendants cannot be sued because they are dissolved entities.
SUMMARY JUDGMENT
"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact," and [f]ailure to make such . . . showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If the initial showing has been made, the burden shifts to the party opposing the motion to establish, by admissible proof, the existence of triable issues of fact or a legal defense to the action (see id.; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). On such a motion, all evidence must be viewed in the light most favorable to the opponent of the motion (see Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931, 932 [2007]). 
In support of its motion, the Board observes that virtually every employer in New York is required to provide workers' compensation coverage to its employees and that one way in which the employer may satisfy this mandate is through membership in a GSIT (see WCL § 50 [3-a]; 12 NYCRR 317.2 [i]; 317.3). The Board also submits the affidavit of its executive director, Mary Beth Woods, together with documentary evidence drawn from the agency's files establishing that each of the Remaining Defendants is a former member of ELITE that assented to joint and several liability for the Trust's obligations and expenses (see Woods Aff., ¶¶ 27-38; Exs. A-E). 
The Board's averment regarding the defendant-members' assent to joint and several liability is supported by the final paragraph of Section VIII of the Trust Agreement, which recites: "Pursuant to the terms of the [J & I] Agreement [that] each Participating Employer is obligated to execute, each Participating Employer is deemed to be jointly and severally liable for all Workers' Compensation and Employer Liability obligation[s] which may be incurred by the Trust during the period of Participating Employer's membership" (Woods Aff., Ex. A [emphasis [*3]added]).[FN5]
The Board also submits proof that the each of the Remaining Defendants executed a J & I Agreement by which it agreed to be jointly and severally liable for the expenses, obligations and liabilities of the Trust incurred while a member and to join in the indemnification provisions of the Trust Agreement and be bound thereby as if it were an original signatory (see Woods Aff., ¶ 33; Ex. C; see also Papa Aff., ¶ 47).[FN6]

The requirement that employer-members of a GSIT assent to joint and several liability as a condition of membership is codified in WCL § 50 (3-a) (2) (g), which requires proof of a "properly executed prescribed participation agreement" for each new member "wherein the member acknowledges their joint and several obligation for their period of membership." In addition, WCL § 50 (3-a) (3) expressly provides for the joint and several liability of GSIT members:
A member's participation in a [GSIT] shall not relieve it of its liability for compensation prescribed by this chapter except by the payment thereof by the [GSIT] or by itself. Each member shall be responsible, jointly and severally, for all liabilities of the [GSIT] provided for by this chapter occurring during its respective period of membership . . . (emphasis added).
Although the emphasized language was not added to WCL § 50 (3-a) (3) until 2008, the statute has long been understood to provide for the joint and several liability of GSIT members (see WCL § 50 former [3-a] [2], [3], as added by L 1966, ch 896, § 2; New York State Workers' Compensation Bd. v Marsh U.S.A., Inc., 126 AD3d 1085, 1087 n 5 [3d Dept 2015] ["both by statute and the terms of the Trust agreement, members are jointly and severally liable for all liabilities of the Trust"]; Murray Bresky Consultants, Ltd v New York Compensation Manager's Inc., 106 AD3d 1255, 1259 [3d Dept 2013] ["(the plaintiff-employer) was by statute (see [WCL] former § 50 [3-a] [2]) and per the trust agreement jointly and severally responsible for all of the liabilities and deficiencies of the trust during its period of membership"]; Matter of Aides At Home, Inc. v State of NY Workers' Compensation Bd., 76 AD3d 727, 728 n [3d Dept 2010] [statute "was amended in 2008 to clarify that a member of a (GSIT) remains jointly and severally liable for unpaid claims that accrued during the period of membership even after the member leaves the trust"]; Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 139 at 7 [new language merely "restates the proposition that exists in present law that members of (GSITs) are jointly and severally liable for the liabilities of (the GSITs)"]).
Further, the Board's authority to levy an assessment on GSIT members to make up any funding shortfall and to commence a collection action against former members for nonpayment is well recognized (see Woods Aff., § 26; WCL § 50; 12 NYCRR 317.9; 317.20; Marsh U.S.A., 126 AD3d at 1087 n 5; State of NY, Workers' Compensation Bd. v A & T Healthcare, LLC, 85 AD3d 1436, 1437 [3d Dept 2011]; Matter of Aides At Home, 76 AD3d at 728).
Based on the foregoing, the Court is satisfied that the Board has demonstrated its prima facie entitlement to partial summary judgment as to the issue of liability. The burden therefore shifts to the Remaining Defendants to raise a triable issue of fact or legal defense to the Board's motion.
A. Sufficiency of the Board's Moving Papers
Certain of the Remaining Defendants argue that the Board's moving papers are insufficient to discharge its prima facie burden because: (1) the Papa affirmation is not based on personal knowledge; (2) the Woods affidavit relies on inadmissible hearsay and does not include a copy of the service agreement between the Trust and CRM or the Trustees' resolution authorizing such agreement; and (3) the Board failed to attach copies of the J & I Agreements to the Complaint (see e.g. Makowski Aff., ¶¶ 10-25). 
The affirmation of Michael Papa states that it was made in his capacity as the WCB's Deputy Counsel for Compliance and Litigation and based on his review of the records and materials maintained by the Board relative to ELITE. The Court is satisfied that Papa, who has been deeply involved in GSIT matters and the Board's litigation concerning the same for many years, possesses the requisite personal knowledge to affirm the statements made in his moving affirmation, which largely are procedural. The Court further concludes that it was proper for Papa to refer to and rely upon the WCB documents and exhibits annexed to his affirmation.
As for the Woods Affidavit, the printouts from the Board's Insurance Compliance-2 ("IC-2") database,[FN7]
which are alleged to constitute inadmissible hearsay, are included only to establish the periods of membership for four of the Remaining Defendants: Brend Development Corp., Park Construction Corp., Telemark Construction Management, Inc. and Wiser Home Remodeling Inc. (see Woods Aff., footnotes 6, 8-10). Inasmuch as there is no substantial dispute that these employers were active members of the Trust for some period of time (see id., ¶¶ 33-34, 38; Ex. C; see also Exs. D-F),[FN8]
their exact dates of membership bear only on the issue of damages and not their joint and several liability for the portion of the Trust's deficit incurred [*4]during their period(s) of membership.[FN9]

The remaining challenges to the sufficiency of the Board's prima facie case merit little discussion. The documents annexed to the Woods Affidavit, including the executed J & I Agreements, were certified by the Board's secretary as true and accurate; the missing documents complained of, including the Trustees' resolution authorizing the retention of CRM and the Trust's service agreement with CRM, are immaterial to the Board's motion for partial summary judgment as to the issue of liability only; and any failure on the part of the Board to annex necessary documents to the Complaint is, at most, a procedural irregularity which may be disregarded inasmuch as the documents bearing on the Remaining Defendants' joint and several liability are part of the present motion record (see CPLR 2001).
Accordingly, the Court is satisfied that the Board has submitted legally sufficient proof in admissible form to support its motion and discharge its initial burden.
B. Formation of ELITE
Certain of the Remaining Defendants contend that issues concerning the formation of ELITE compel the denial of the Board's motion for partial summary judgment. Specifically, these defendants argue that: (1) the Trust is void ab initio because its formation was infected by fraud and CRM was not a licensed administrator at the time; (2) the application for GSIT status submitted to the Board failed to identify the employee classification numbers, payroll or the number of employees of Trust members; (3) the application for GSIT status did not comply with certain provisions of the WCL and attendant regulations; and (4) only one Trust member, R.W. Painting Inc., signed the Trust Agreement (see e.g. Hillman Aff., ¶¶ 6-24).
Preliminarily, the Court observes that ELITE was in active operation for almost nine years. During this period, the Trust provided workers' compensation coverage to approximately 2,600 employers and, in so doing, was responsible for the administration of more than 5,400 workers' compensation claims for which it paid out almost $100 million on behalf of injured workers (see Papa Reply Aff., ¶ 18; Ex. A). Thus, having accepted the benefits of Trust membership, the Remaining Defendants cannot avoid their respective statutory and contractual obligations by now claiming that the Trust never existed as such (see Beutel v Beutel, 55 NY2d 957, 958 [1982]; Seton Health, 127 AD3d at 1299-1300).
In considering defendants' contention that the Trust is void ab initio due to alleged infirmities in its formation and CRM's lack of licensure at the time, the Court's starting point is Matter of Cruz v New Millennium Constr. & Restoration Corp. (17 AD3d 19 [3d Dept 2005]), in which the Appellate Division, Third Department held that the broad language of WCL § 54 (5), governing the cancellation and termination of certain workers' compensation insurance contracts, precludes "voiding a contract for fraud[,] thereby making it impossible to have ab initio rescission" (id. at 22-23 [internal citation omitted]). Separate and apart from the specific dictates of the WCL, the Third Department found "it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the public policy considerations underlying the compulsory workers' compensation statutory scheme, namely, to surely and swiftly compensate an injured employee or a dependent of a deceased employee" (id. at 23 [*5][internal citation omitted]). In particular, the Appellate Division highlighted the "serious potential adverse effects of retroactive cancellation on employees . . . , even when such termination is based on fraud perpetrated by the employer" (id.).
Although this case does not implicate the same statutory provisions that were before the Third Department in Cruz, similar considerations compel the conclusion that a GSIT, such as ELITE, cannot be deemed void ab initio. Retroactive cancellation of ELITE arguably would mean that the Trust never existed, thereby precluding continued insurance coverage for workers who were injured while employed by Trust members. Moreover, the regulations governing GSITs include notice of termination requirements analogous to those in Cruz. Under the circumstances, the Court does not believe that the retroactive voiding of ELITE or its formation documents is a proper remedy for any proven fraud or infirmities in its formation.
Nor does the Court see merit in the alternative contention that ELITE is void because CRM lacked the required license at the time of formation and for about two years thereafter. The defendants making this argument have failed to establish any basis in law or logic for deeming a GSIT to be void ab initio because its administrator was not properly licensed, and the public policy considerations emphasized in Cruz strongly counsel against such a remedy. Moreover, in prohibiting unlicensed persons and entities from representing GSITs before the Board, the State Legislature already has established a remedy in the form of criminal and civil penalties against those who violate the statutory prohibition (see WCL § 50 [3-b]). 
Also lacking in merit is defendants' contention that the Trust is void because it formation did not comply with certain provisions of the WCL and because only one member signed the Trust Agreement. The record shows that ELITE was formed on August 27, 1999, when Robert Williams, the president of R.W. Painting Inc., signed the Trust Agreement (see Woods Aff., Ex. A). Williams also signed the Application for Group Self-Insurance ("Application") on September 21, 1999, based on the provision of the Trust Agreement making him the initial trustee of ELITE (see Papa Reply Aff., ¶ 25; Ex. C).
On October 29, 1999, the Board issued a Form of Decision setting forth three conditions for the valid establishment of a GSIT: (1) that an acceptable surety bond be issued; (2) that the applicant provide excess insurance coverage; and (3) that the applicant sign and execute an agreement and undertaking in a form prescribed by the Board and comply with certain prescribed conditions (see Papa Aff., ¶ 26; Ex. D). On the same date, the Board issued a Notice of Qualification As a Group Self-Insurer determining that ELITE had satisfied the foregoing requirements and, therefore, was approved as an authorized GSIT as of August 27, 1999 (see id., ¶ 27, Ex. E). Further, four employers, including R.W. Painting Inc., applied for membership in ELITE when it commenced operations via applications that included their payroll and class code information (see id., ¶ 28, Ex. F).
Contrary to defendants' contention, the Application did provide a business address for the Trust and set forth the name of its chairperson, Williams, thereby complying with the then-existing mandate of WCL former § 50 (3-a) (4).[FN10]
Further, defendants have failed to point to any [*6]controlling provision of the WCL or attendant regulations in effect at the time that precluded the valid formation of a GSIT via a trust agreement signed only by a single member,[FN11]
and, in any event, at least four employers were members of the Trust when it commenced active operation. Finally, any alleged failure of the Trust to comply with the then-existing requirements of 12 NYCRR 315.6 (repealed Jan. 31, 2001) or other applicable regulatory requirements is not a sufficient basis to warrant retroactive invalidation of the Trust (see supra).[FN12]

Based on the foregoing, the Court rejects that the argument that the Trust is void due to fraud or other irregularities in its formation.
C. Joint and Several Liability
Many of the Remaining Defendants oppose the motion on the ground that WCL § 50 (3-a) (3) did not impose joint and several liability until the 2008 amendments (see e.g. White Aff., ¶¶ 12-13, 16; Kriss Aff., ¶ 13; Makowski Aff., ¶¶ 46-51). However, the joint and several liability of GSIT members always has been an essential element of the statutory and regulatory scheme (see supra), and the 2008 amendment merely served to clarify this pre-existing requirement. 
More fundamentally, the Remaining Defendants' joint and several liability for the Trust's deficit exists independently of any statute or regulation. As the Third Department recently explained:
[WCL] § 50 (3-a) (3) did not create a new liability, but merely implemented the existing common-law concept of joint and several liability by requiring [GSITs] to include it in their contractual relationships with members. Members of the [GSIT] incurred joint and several liability for the trust's cumulative deficit by entering into agreements that imposed that liability
(New York State Workers' Compensation Bd. v Any-Time Home Care Inc., 2017 NY Slip Op 08595, *3 [3d Dept, Dec. 7, 2017]; see also 12 NYCRR 317.2 [i] [defining a GSIT as "an association of employers . . . that contractually agree . . . to assume the workers' compensation liabilities of each associated member" (emphasis added)]). 
Here, ELITE members assented to joint and several liability by entering into the J & I Agreements required as a condition of their membership. Thus, the Court is satisfied that, "both by statute and the terms of the Trust [and J & I] agreement[s], members are jointly and severally liable for all liabilities of the Trust, including funding deficits" (Marsh U.S.A., 126 AD3d at 1087 n 5).[FN13]

In this connection, the O'Donnell Defendants submit the affidavit of Craig O'Donnell, an alleged officer of each such defendant, who claims that "[n]ot one of those six defendants was a signatory to the contract on which [the Board's] claim of liability is based" (O'Donnell Aff., ¶ 1). Yet, Exhibits C and D to the Woods Affidavit contain the signed Applications for Participation approved by the Board for each of the six of the O'Donnell Defendants as well as the signed J & I Agreements for all but O'Donnell Development Corp. ("ODC"). However, it is clear from ODC's Application for Participation and Notice of Termination that ODC was a Trust member from March 22, 2001 to April 1, 2008 (see Woods Aff., footnote 7; Exs. D & E). Under the circumstances, Craig O'Donnell's unsupported denial of Trust membership is insufficient to defeat the Board's motion for partial summary judgment.
D. Unconstitutional Taking
The argument of certain Remaining Defendants that the imposition of joint and several liability constitutes an unconstitutional taking of private property is without merit. As the Third Department has observed:
[T]he amounts of the assessments may have been unanticipated, but it cannot be said that their economic effect on plaintiffs rises to the level of a taking. While plaintiffs may be deprived of substantial amounts of money to pay the assessments, their liability is not made in a vacuum, and directly depends on their proportional role in the self-insurance program and the workers' compensation system
(Held v State of New York Workers' Compensation Bd., 85 AD3d 35, 43 [3d Dept 2011] [internal quotation marks, citations and brackets omitted], appeal dismissed & lv denied 17 NY3d 837, 837-838 [2011], cert denied 566 US 936 [2012]). The Appellate Division further noted that "the character of the government action at issue here is a public program adjusting the benefits and burdens of economic life to promote the common good and, as such, is not generally the type of regulation considered to rise to the level of a taking" (id. at 44; see also Matter of Aides At Home, 76 AD3d at 729 [the petitioner's contention "that the assessment was unconstitutional" found "to be without merit"]). And, of course, the fact that the Remaining Defendants contractually assented to the imposition of joint and several liability wholly undermines their claim of an unconstitutional governmental taking.
E. Statute of Limitations
Some of the Remaining Defendants assert that this action is barred by the expiration of the statute of limitations (see e.g. Calice Aff., ¶ 35; Makowski Aff, ¶¶ 26-32). They argue that the Board's claims are subject to the three-year statute of limitations of CPLR 214 (2) applicable to statutory causes of actions, not the six-year statute of limitations that applies to contractual claims (see CPLR 213 [2]). They further maintain that the Board's claims accrued on July 16, 2008, when the Trust ceased active operation. Thus, these defendants contend that the Board's failure to commence this suit by July 16, 2011 compels dismissal of the Complaint.
In a recent and virtually identical collection action, however, the Third Department ruled that the causes of action asserted by the Board are contractual in nature, regardless of their statutory underpinnings, and, therefore, are governed by the six-year statute of limitations of CPLR 213 (2) (see Any-Time Home Care, 2017 NY Slip Op 08595 at *2-3; see also Belair Care Ctr., Inc. v Cool Insuring Agency, Inc., 55 Misc 3d 1216[A], 2017 NY Slip Op 50609[U], *9-10 [*7][Sup Ct, Albany County 2017]). Further, it is by now well settled that the Board's claims accrued when the former Trust members failed or refused to pay the assessments (see A & T Healthcare, 85 AD3d at 1437). Given that the Board first levied assessments on January 31, 2011 and members were given 45 days to respond (see Papa Aff., Ex. B, pp. 2-3; Ex. G, ¶ 2256), the Board's claims accrued no earlier than March 18, 2011, and this action timely was commenced on January 31, 2014 (see id., Ex. D).
F. The 120-Day Time Frame
Many of the Remaining Defendants contend that the Board's initial deficit assessment issued in 2011 and its final assessment issued in 2014 are unenforceable because (1) the assessments were not issued within the 120-day period required by the version of WCL § 50 (3-a) (7) (b) in effect at the time and (2) the July 2015 amendment to the statute cannot be accorded retroactive effect (see e.g. Hillman Aff., ¶¶ 83-94; Makowski Aff., ¶¶ 52-59).
At the time of the challenged assessments, WCL § 50 (3-a) (7) (b) read, in pertinent part:
The [WCB] chair shall levy an assessment on the members of a defaulted [GSIT] within [120] days of such default or of the effective date of the chapter of the laws of [2008] which amended this subdivision, whichever is later, and against the members of any other terminated [GSIT] when necessary, for such an amount as he or she determines to be necessary to discharge all liabilities of the [GSIT] . . . . The chair may impose subsequent deficit assessments, or return funds to members, to adjust the moneys collected to reflect the time of participation, and percent of [GSIT] liabilities for such time. Notwithstanding any such action by the chair, each member of the [GSIT] shall remain jointly and severally responsible for all liabilities provided by this chapter including but not limited to outstanding and estimated future liabilities and assessments.
In June 2015, the statute was amended to clarify that the 120-day period was addressed solely to "interim" assessments and was not applicable to any subsequent or further deficit assessments (Papa Aff., Ex. L [Assembly sponsor's memo]).[FN14]

"A comprehensive review of [WCL § 50] reveals that the time limitation for the assessments [on defaulted GSITs] is a function of providing short term funding in order to continue to pay the ongoing obligations of the [GSIT]" (New York State Workers' Compensation Bd. v 1 & 3 On Fifth Corp., Sup Ct, Albany County, Mar. 30, 2016, Zwack, J., Index No. 2900-13 at 13). Thus, as the Board appropriately observes, the 120-day period set forth in the first sentence of the quoted sub-paragraph applies only to assessments on members of a "defaulted" GSIT, whereas assessments against the members of a "terminated" GSIT that has not defaulted may be made "when necessary" (WCL § 50 [3-a] [7] [b]). Further, the second sentence of the statute always has authorized the Board to "impose subsequent and further deficit assessments," and the final sentence always has confirmed that "each member of the [GSIT] shall remain jointly and severally responsible for all liabilities provided by this chapter including but not limited to outstanding and estimated future liabilities and assessments."
In the Court's view, the Legislature intended the 120-day requirement to serve as a vehicle to promote the solvency of the workers' compensation system and mitigate the impact of a GSIT's default on the larger self-insurance community (see WCL § 50 [5] [g]). This salutary objective would be thwarted by the Remaining Defendants' interpretation of the statute, which would allow them to avoid the joint and several liability to which they agreed as a condition of Trust membership, and is not compelled by the text of the statute. Indeed, with one notable exception, the "[c]ase law is consistent in that there has not been strict adherence to the 120 day rule" (1 & 3 On Fifth Corp., Index No. 2900-13 at 13 [collecting cases]).[FN15]

Accordingly, in the absence of any persuasive basis for concluding that the 120-day period was intended to constitute a limitation on the authority of the Board to impose assessments, the Court concludes that the statutory provision merely is directory in nature (see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d 531, 535 [1992]; Matter of Grossman v Rankin, 43 NY2d 493, 501 [1977]; see generally Matter of Dickinson v Daines, 15 NY3d 571, 574-577 [2010]).[FN16]
As a result, the Board's entitlement to partial summary judgment on the issue of defendants' liability for the unpaid assessments cannot be defeated by [*8]reliance on the 120-day requirement of WCL § 50 (3-a) (7) (b).[FN17]

G. Discovery
Several of the Remaining Defendants argue that the Board's motion for partial summary judgment is premature because discovery is necessary with respect to: (1) the WCB's alleged malfeasance in overseeing the Trust; (2) the misconduct of CRM in administering the Trust; and (3) the allegedly forged signatures of the Huxley Defendants and FMI Masonry Inc. ("FMI") on Trust-related documentation.
A party opposing summary judgment on the ground that discovery is necessary "must produce some evidence indicating that further discovery will yield material and relevant evidence," and "[t]he mere hope that evidence sufficient to defeat the motion may be uncovered during the discovery process is not enough" (Stoian v Reed, 66 AD3d 1278, 1280-1281 [3d Dept 2009] [internal quotation marks and citations omitted]; see CPLR 3212 [f]). 
The Court concludes that the Remaining Defendants have failed to demonstrate that discovery regarding the WCB's oversight of the Trust or the alleged misconduct of CRM is necessary to oppose the Board's motion, which is limited to the issue of the former members' joint and several liability for the deficit. Insofar as defendants seek non-monetary relief with respect to the Board's oversight or administration of the Trust,[FN18]
 their remedy was to timely commence a CPLR article 78 proceeding (see e.g. Matter of Aides At Home, 76 AD3d at 727; see also n 17, supra). In any event, the alleged misconduct by the Board bears only the issue of defendants' damages, not their joint and several liability for the Trust's deficit pursuant to contract and statute (see 1 & 3 On Fifth Corp., index No. 2900-13 at 18), which is the only issue raised by the Board's motion. And with respect to the alleged misconduct of CRM and other non-parties, "the possibility of another entity's liability does not preclude [the Board] from pursuing litigation against joint[ly] and severally liable Trust members" (Matter of Aides At Home v State of NY Workers' Compensation Bd., Sup Ct, Albany County, Feb. 23, 2009, McDonough, J., index No. 6389-08 at 5, affd 76 AD3d 727 [3d Dept 2010]).
Nor is there a proven need for discovery with respect to the allegedly forged signatures contained in the membership applications and J & I Agreements of the Huxley Defendants and FMI. As for FMI, it specifically acknowledges that it was a member of and participant in ELITE (see Fazio Aff., ¶ 8; see also Woods Aff., ¶ 38). Thus, no amount of discovery will permit FMI to retroactively disassociate itself from the burdens of Trust membership after obtaining the benefits.
With respect to the Huxley Defendants, the record shows that Huxley Construction Corp. was a member of ELITE from July 16, 2003 to April 17, 2008, while Huxley Creations Corp. was a member from March 25, 2005 to April 17, 2008 (see Woods Aff., ¶ 38; Exs. D & E). Even assuming the truth of the averment of Jeffrey Audain, the president of both corporations, that he did not sign the Trust documents or authorize his signature to be affixed thereto, the Huxley Defendants' knowing receipt of the benefits of Trust membership over a long period establishes ratification as a matter of law (see Beutel, 55 NY2d at 958; Seton Health, 127 AD3d at 1299-1300; 1 & 3 On Fifth Corp., index No. 2900-13 at 17 [rejecting identical argument]). Indeed, in his brief and highly conclusory affidavit, Audain offers no explanation as to how the Trust could have served as the workers' compensation insurer to Huxley Construction for five years and to Huxley Creations for three years without his knowledge and consent.[FN19]

Based on the foregoing, the Court concludes that the Board's prima facie entitlement to summary judgment on the legal issue of joint and several liability cannot be defeated by any claimed need for discovery (see Matter of Held, 103 AD3d at 1064 [discovery "not needed . . . because of the predominantly legal nature" of the relief sought by petitioners]; see also 1 & 3 On Fifth Corp., index No. 2900-13 at 18-19).[FN20]

H. Alleged Wrongdoing of CRM
The Bast Defendants and certain other Remaining Defendants argue that the Board's motion should be denied because: (1) an issue of fact exists as to whether CRM fraudulently induced them to join the Trust; (2) the J & I Agreements that these defendants signed lack any provision requiring the member to indemnify the Trust for losses occasioned by the fraud of CRM; (3) an issue of fact exists as to whether the Trust is responsible for CRM's wrongdoing; and (4) the Board, as successor, steps into the shoes of the Trust and, therefore, cannot maintain this action.
The Court rejects these arguments and contentions. While the Bast Defendants submit eight affidavits claiming that CRM fraudulently induced them to join and/or remain a member of the Trust, "the possibility of another entity's liability does not preclude [the Board] from pursuing litigation against joint[ly] and severally liable Trust members" (Matter of Aides At Home, index [*9]No. 6389-08 at 5).[FN21]
Indeed, courts have routinely granted summary judgment in GSIT collection actions notwithstanding the claims of fraud made by the former members against the GSIT's administrators (see supra).
Similar considerations compel the rejection of defendants' attempt to impute CRM's wrongdoing to the Board (see 1 & 3 On Fifth Corp., index No. 2900-13 at 20), which sues not only as the successor to the Trust, but also as the governmental agency charged with ensuring the solvency of GSITs (see WCL § 50; 12 NYCRR 317.9 [b] [7]; State of NY Workers' Compensation Bd. v Wang, 147 AD3d 104, 117 [3d Dept 2017] [the Board, acting in its governmental capacity, has a duty "to ensure that the trust maintained adequate reserves to cover employee claims"]). Further, any negligence or misconduct in the Board's administration of the Trust only bears on the issue of damages, not liability (see supra).
As for the purported ambiguity in the J & I Agreements, both versions used by ELITE (see Papa Aff., ¶¶ 47-48) clearly and unambiguously provided for joint and several liability for all of the Trust's liabilities. As such, the fact that the J & I Agreements do not expressly address liabilities arising out of fraud committed by the Trust's administrators or other contractual agents does not serve to create any ambiguity or relieve the members of their obligation to indemnity the Trust for all of its expenses, obligations and liabilities. 
And given that the losses allegedly engendered by fraud are attributable to the wrongdoing of a third party, the Remaining Defendants have failed to demonstrate that enforcement of the J & I Agreements under the circumstances presented here runs afoul of any public policy of this State. In fact, the Board sues here to vindicate an important and longstanding public policy of the State: ensuring sufficient funding for the payment of workers' compensation benefits to injured employees. 
Finally, the Board's authority to levy assessments on former GSIT members and commence a collection action for non-payment is well established (see supra), and the Board cannot be estopped from carrying out its statutory and regulatory obligations in the public interest based upon allegations of misconduct (see Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev., 10 NY3d 776, 779 [2008]).
I. Apportionment of the Trust's Deficit
Several of the Remaining Defendants argue that the ELITE deficit has been apportioned to defendant-members without regard to their loss runs — i.e., their actual loss experience history (see e.g. Bergener Aff., ¶¶ 13-14; Galasso Aff., ¶¶ 12-15). This argument appears to be aimed at the reasonableness of the Board's allocation methodology. 
As an initial matter, there has been no timely CPLR article 78 challenge to the Board's post-forensic deficit assessment of January 31, 2011 or its updated assessment in December 2013. In any event, the Trust deficit has been allocated to the Remaining Defendants based upon the joint and several liability provisions of the Trust documents and the WCL, and this [*10]methodology has been upheld by the Third Department as reasonable (see Matter of Aides At Home, 76 AD3d at 728).
J. Accounting
Some of the Remaining Defendants argue that an accounting of the Trust should be ordered (see e.g. Hillman Aff., ¶¶ 100-108). However, the Board already has conducted at least three accountings,[FN22]
and it represents to the Court that it "plans to have the [Trust] deficit updated yet again" following the disposition of the instant motion practice (Papa Reply Aff., ¶ 144). Under the circumstances and given that the actual Trust deficit bears only on the issue of damages, the Court finds that defendants have failed to demonstrate the necessity of directing an accounting at this juncture.
K. Effect of ALP Purchase
Remaining Defendant St. George Enterprises Contracting Inc. ("St. George") takes the position that the Board's purchase of an ALP, which transferred all open ELITE claims to a commercial insurance carrier, transferred all rights of recovery to that carrier (see Gillen Aff., ¶¶ 18-21). In making this argument, St. George points to the language in the ALP pertaining to the carrier's right to recover for overpayments.[FN23]

The ALP carrier's right to recover the workers' compensation payments it makes from responsible parties does not, however, have any bearing on the Board's right to recover from defendants the cost of purchasing the ALP or the workers' compensation claims paid prior to the ALP taking effect (see Papa Aff., Ex. F, p. 4). Thus, the Remaining Defendants are not relieved from liability by the Board's purchase of the ALP, which merely fixed the Trust's future claims liability at a sum certain.
L. Dissolved Entities
Three of the Remaining Defendants, Don Rabideau Construction, LLC ("Don Rabideau"), Trombley Painting Corp. ("Trombley") and St. George, oppose the Board's motion for partial summary judgment on the ground that they no longer exist as business entities (see e.g. Mead Aff., ¶¶ 13, 23; Brooks Aff., ¶¶ 6, 10, 12-14; 16-19; St. George Aff., ¶ 4). Don Rabideau, a limited liability company ("LLC"), allegedly was dissolved in 2008; Trombley, a business corporation, was dissolved in 2011; and St. George, also a business corporation, was dissolved in [*11]2005.
It is well settled that "[a] dissolved [business] corporation may sue or be sued" (Matter of Ford v Pulmosan Safety Equip. Corp., 52 AD3d 710, 711 [2d Dept 2008]; see Cava Constr. Co., Inc. v Gealtec Remodeling Corp., 58 AD3d 660, 661 [2d Dept 2009]). Pursuant to Business Corporation Law (BCL) § 1006 (b), "[t]he dissolution of a corporation shall not affect any remedy available . . . against such corporation . . . for . . . any liability incurred before such dissolution, except as provided in [BCL §§ 1007 or 1008]" (emphasis added). BCL § 1007, in turn, establishes a process by which a bar date can be established for claims against a dissolved corporation.
In opposing the Board's motion, Trombley and St. George argue that their alleged joint and several liability for the Trust's deficit is a post-dissolution liability because the Board levied its assessment after these defendants' dissolutions.[FN24]
However, BCL § 1007 (a) expressly applies to "unliquidated or contingent claims," and Trombley and St. George's contingent, unliquidated liability to the Trust under the J & I Agreements was a known, pre-dissolution liability within the meaning of BCL § 1007, even if the claims had not yet accrued for statute-of-limitations purposes (see Matter of Ford, 52 AD3d at 711 ["For purposes of (BCL) § 1006 (b), liability was incurred when the claimants first used (the dissolved corporation's) safety equipment"]; see also Tedesco v A.P. Green Indus., Inc., 8 NY3d 243, 247-248 [2007]; Town of Amherst v Hilger, 106 AD3d 120, 127 [4th Dept 2013]). Inasmuch as Trombley and St. George have failed to submit any proof that the Board's contractual claim is barred under BCL § 1007,[FN25]
the Board's motion must be granted as against these defendants.
Don Rabideau, however, is an LLC, which is governed by its own set of laws. LLC Law § 703 contemplates that an LLC maintains its legal existence and may "defend suits" until the "winding up" process is concluded, at which time the assets of the company shall be distributed (see LLC Law § 704). However, there is no prescribed time limit for the winding up of the company, no analogue to the BCL § 1007 bar-date process, and no specific provisions governing contingent liabilities of a dissolving company.[FN26]

In opposing the Board's motion and in support of its cross motion for dismissal of the Complaint, Don Rabideau submits only a printout from the New York Department of State, Division of Corporations that shows its current status as "INACTIVE - Dissolution (Dec 30, 2008)," as well as a copy of a receipt indicating that a "Dissolution" document had been filed on December 30, 2008 (Mead Aff., Ex. 5). Given the absence of any proof regarding the winding up of Don Rabideau,[FN27]
and the parties' failure to provide the Court with any legal authorities that speak directly to suits against dissolved LLCs, the Court concludes that the Board's motion against Don Rabideau and the cross motion should be denied, without prejudice to renewal upon the completion of discovery.
M. emaining Arguments
The Court has considered the remaining arguments tendered by defendants in opposition to the Board's motion or in support of the cross motions, but finds that they do not merit extended discussion. For example, while certain Remaining Defendants seek to avoid joint and several liability for the Trust's cumulative deficit by arguing that they left the Trust before this liability had accrued (see e.g. Morogiannis Aff., ¶¶ 8-10), this argument lacks support (see Papa Aff., Ex. A; Woods Aff., ¶¶ 38-40). Further, contrary to the contention of certain Remaining Defendants, the Board only seeks to hold them liable for the portion of the cumulative deficit incurred during their years of Trust membership, not the entire deficit.
DEFAULT JUDGMENT
The Board moves for entry of default judgments against nine defendants that failed to serve an answer to the Complaint: Add-Ventures, Inc.; Collins Bros. Construction Corp. of Dutchess County; Dolphin Builders, Inc.; Grazi 1 Corp.; Italiano Bros. Drywall; Joshua Hinkley; L & M Velardo Contracting Corp.; Lyman Reed Contracting; and Talucci Contractors, Inc. 
"When a defendant has failed to appear, plead or proceed to trial . . . , the plaintiff may seek a default judgment against" the defendant (CPLR 3215). Here, the Board submits evidence that the nine defaulting defendants ("Defaulting Defendants") failed to answer the Complaint (see Papa Aff., ¶¶ 55-56; Repsher Aff., ¶¶ 4-7; CPLR 2103 [b] [2] and 3012 [a]). The Board also submits proof of the facts constituting its claim (see CPLR 3215 [f]; see also supra), as well as proof of service of its motion papers upon the Defaulting Defendants (see CPLR 3215 [g] [1]).
As the Board recognizes, however, it failed to seek entry of default judgments against the Defaulting Defendants within one year of their defaults. As a result, dismissal of the Complaint is required "unless sufficient cause is shown why the complaint should not be dismissed" (CPLR 3215 [c]; see Papa Aff., ¶ 57). "To establish 'sufficient cause,' the [plaintiff] must demonstrate that it had a reasonable excuse for the delay in taking proceedings for entry of a default judgment and that it has a potentially meritorious action" (Checksfield v Berg, 148 AD3d 1376, 1376-1377 [3d Dept 2017] [internal quotation marks and citation omitted], appeal dismissed & lv denied [*12]29 NY3d 1044 [2017]).
For the reasons discussed above, the Court finds that the Board has a meritorious cause of action against the Defaulting Defendants. With respect to its excuse for the delay, the Board explains that it timely moved for default judgments in April 2015 against those defendants that did not respond to the service of the amended summons with notice. However, in preparing the instant motion for partial summary judgment, the Board discovered that it was missing answers from the nine Defaulting Defendants. The Board then attempted to obtain responsive pleadings (see Repsher Aff., ¶¶ 3-4) and indicated that it "would accept service of an Answer prior to the making of the instant summary judgment motion" (id., ¶ 5). Despite these efforts, the Board did not receive answers from the Defaulting Defendants (see id., ¶ 4; Papa Aff., ¶ 63).
Based on the foregoing, the Court is satisfied that the Board's failure to seek entry of default judgments against the Defaulting Defendants within one year after their respective defaults amounts to, at most, an excusable and non-prejudicial law office failure occasioned by the sheer number of defendants named in this action (see CPLR 2005; LaValle v Astoria Constr. & Paving Corp., 266 AD2d 28, 28 [1st Dept 1999]). Accordingly, in the exercise of discretion, the Court concludes that the Board has shown a "sufficient cause" to avoid the dismissal of the Complaint under CPLR 3215 (c). The Court further concludes that the Board has demonstrated its entitlement to entry of default judgments against the Defaulting Defendants.
AMEND ANSWERS
Several Remaining Defendants cross-move for leave to amend their answers pursuant to CPLR 3025 (b). The Board does not oppose these applications.
Bervy Leasing Corp. and George Lagonia Jr. Custom Carpentry, Inc., which are now represented by the law firm of Couch White, LLP ("Couch White"), seek to amend their answering pleadings to conform to the answers of other defendants represented by Couch White. Inasmuch as leave to amend pleadings should be freely granted in the absence of operative prejudice (see Murray v City of New York, 43 NY2d 400, 404-405 [1977]) and there is no prejudice to the Board, the motion must be granted.
Defendant Alltek Energy Systems, Inc. ("Alltek") makes a similar motion, seeking to amend its answer to add additional affirmative defenses based upon the discovery that already has been conducted in this case. Because Alltek merely seeks leave to assert additional defenses that already have been interposed by some of the other defendants in this action, there is no prejudice to the Board. Accordingly, Alltek's motion must likewise be granted. 
DISCONTINUANCE
The Court finds it appropriate to discontinue this action pursuant to CPLR 3217 (b) as against the defendants that have either settled with the Board or as against which the Board sought discontinuance for other reasons (see Papa Aff., ¶¶ 67-69; Papa Reply Aff., ¶ 5).
CONCLUSION
Accordingly, it is
ORDERED that plaintiff's motion for partial summary judgment on the issue of liability is granted as to all of the Remaining Defendants, except as against defendant Don Rabideau Construction, LLC, and it is determined that said Remaining Defendants are jointly and severally liable for the deficit of ELITE for their respective period(s) of participation therein; and it is further
ORDERED that plaintiff's motion for summary judgment against defendant Don Rabideau Construction, LLC is denied, in accordance with the foregoing; and it is further
ORDERED that plaintiff's motion for entry of default judgments against the Defaulting Defendants is granted; and it is further
ORDERED that plaintiff's motion to discontinue this action against certain, specified defendants is granted; and it is further
ORDERED that the cross motions of the Remaining Defendants seeking summary dismissal of the Complaint are denied in their entirety; and it is further
ORDERED that the branches of the cross motions of defendants Bervy Leasing Corp., George Lagonia Jr. Custom Carpentry, Inc. and Alltek Energy Systems, Inc. seeking leave to amend their pleadings are granted; and it is further
ORDERED that plaintiff shall promptly settle on notice an appropriate order and/or judgment incorporating the relief directed herein, which shall clearly identify the parties (i) against whom partial summary judgment has been granted, (ii) against whom default judgments have been granted and (iii) against whom this action has been discontinued; and it is further
ORDERED that the remaining parties to this action shall confer in good faith regarding (i) the issues set forth in Rule 8 of the Commercial Division, (ii) a schedule for the completion of disclosure and the filing of a note of issue and (iii) the possibility of designating a small group of defense counsel to act on behalf of defendants with respect to common issues where the interests of defendants may be aligned (e.g., discovery from the Board); and it is further
ORDERED that the remaining parties to this action shall appear for a preliminary conference on Thursday, February 15, 2018 at 1:00 p.m.; and finally it is
ORDERED that, in addition to filing and service, the Workers' Compensation Board shall forthwith circulate courtesy copies of this Decision & Order to all defendants whose appearances are noted herein.
This constitutes the Decision & Order of the Court. The original of this Decision & Order are being transmitted to plaintiff's counsel for filing and service; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision & Order shall not constitute entry or filing under CPLR 2220, and counsel is not relieved from the applicable provisions of that section respecting filing, entry and notice of entry.
Dated: January 9, 2018
Albany, New York
RICHARD M. PLATKIN A.J.S.C.
Papers Considered:
1. Notice of Motion, dated May 18, 2017; Affirmation of Michael Papa, Esq., dated May 18, 2017, with attached exhibits; Affidavit of Mary Beth Woods, sworn to May 18, 2017, with attached exhibits; Affidavit of Stephen Repsher, sworn to May 18, 2017; Memorandum of Law in Support of Motion for Partial Summary Judgment, for Default Judgment and to Discontinue, [*13]dated May 18, 2017;
2. Affidavit of Michael Kriss in Opposition to Plaintiff's Motion for Partial Summary Judgment Against KrisStone, LLC, sworn to July 20, 2017, with attached exhibit; Supplemental Attorney Affirmation in Opposition to Plaintiff's Motion for Partial Summary Judgment Against KrisStone, LLC, dated August 22, 2017;
3. Affidavit of Kurt Nusbaum in Opposition, sworn to July 10, 2017, with attached exhibit;
4. Affirmation in Opposition to Plaintiff's Motion for Partial Summary Judgment of Kimberly M. Thrun, dated August 3, 2017, with attached exhibits; Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, dated August 3, 2017;
5. Affirmation in Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability of Charles M. Balistreri, Esq., dated August 4, 2017; Memorandum of Law on Behalf of Defendants Rimco Air Conditioning Co., Inc. and Crustal Air Conditioning Corp. in Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability, dated August 4, 2017;
6. Attorney Affidavit of James M. Brooks, Esq. in Opposition, sworn to July 21, 2017, with attached exhibits; Supplemental Attorney Affidavit of James M. Brooks, Esq., sworn to August 3, 2017;
7. Affidavit of Patricia Gillen, Esq. in Opposition, sworn to July 31, 2017, with attached exhibits; Affidavit of Steven St. George in Opposition, sworn to July 31, 2017;
8. Affidavit of Christopher D. Galasso on Behalf of Defendant, Lakestone Development, Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment, sworn to August 1, 2017, with attached exhibit; Affidavit of Giuseppe Surdi on behalf of Defendant, Masters Edge, Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment, sworn to August 2, 2017, with attached exhibit;
9. Supplemental Attorney Affidavit of Erin Mead, Esq. in Opposition, sworn to August 4, 2017;
10. Affidavit of Michael Todd in Opposition, sworn to August 3, 2017, with attached exhibits; Affidavit of Michael A. Bergener, sworn to August 3, 2017; Memorandums of Law in Opposition to Plaintiff's Motion for Summary Judgment, dated August 3, 2017;
11. Affidavits of Michael De Pompo on Behalf of Defendants Blade General Contracting Inc., Blade Contracting Inc. and Blade Concepts, Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment, sworn to August 3, 2017, with attached exhibits; Affidavit of Terri Punzone on Behalf of Defendant Apollo Restoration, Inc. in Opposition to Plaintiff's Motion for Partial Summary Judgment, sworn to August 3, 2017, with attached exhibit; Affirmation of Priscilla J. Triolo, Esq. in Reply to Plaintiff's Opposition to the Cross-Motion and in Further Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, dated October 12, 2017;
12. Affidavits in Opposition of William J. White, Esq., sworn to August 2, 2017, with attached exhibits; Affidavit in Opposition of Simeon Hunsdon, sworn to August 2, 2017; 
13. Affidavit in Opposition to Motion for Partial Summary Judgment and in Support of Cross Motion to Dismiss of Richard J. Rothe, sworn to August 7, 2017, with attached exhibit; Memorandum of Law in Opposition to Motion for Partial Summary Judgment and in Support of Cross Motion to Dismiss, undated, with attached exhibit;
14. Opposition Affidavit of Christina Morogiannis, sworn to August 18, 2017, with attached [*14]exhibits; Affirmation of Gerald V. Dandeneau, Esq., undated;
15. Affirmation in Opposition of Jason L. Rothman, Esq., dated August 25, 2017, with attached exhibits;
16. Affirmation of Allison M. Kourbage, dated August 25, 2017; Affidavit of Gail Kourbage, sworn to August 25, 2017.
17. Affirmation in Opposition to Motion for Partial Summary Judgment and in Support of Cross Motion to Dismiss of Harvey S. Barr, Esq., dated August 25, 2017, with attached exhibit;
18. Answering Affidavit of Dean A. Calice, sworn to June 30, 2017; Supplemental Attorney Affirmation of Gustave J. DeTraglia, Jr., undated;
19. Affirmation in Opposition of Allison M. Kourbage, Esq., dated August 25, 2017; Affidavit in Opposition to Plaintiff's Motion for Partial Summary Judgment of Gail S. Kourbage, sworn to August 25, 2017, with attached exhibit;
20. Notice of Cross-Motion, dated August 1, 2017; Attorney Affirmation of Donald J. Hillmann, Esq., dated July 31, 2017, with attached exhibits; Affidavit of Christopher O. Bast, Jr., sworn to July 21, 2017; Affidavit of Harold M. Hatfield, sworn to July 21, 2017; Affidavit of Antonio E. Abrantes, sworn to July 26, 2017, with attached exhibits; Affidavit of George Lagonia, Jr., sworn to July 27, 2017; Affidavit of Serge A. Bervy, Jr., sworn to July 24, 2017; Affidavit of Joseph T. Kirchhoff, sworn to July 25, 2017, with attached exhibits; Affidavit of Michael Intrabartola, sworn to July 27, 2017; Affidavit of Bruce Kelley, sworn to July 27, 2017, with attached exhibit; and Memorandum of Law in Opposition to Motion for Partial Summary Judgment and in Support of Cross-Motion to Dismiss, dated August 1, 2017.
21. Notice of Cross-Motion, dated August 28, 2017; Affirmation in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Motion to Dismiss of Kieran M. Lalor, Esq., dated August 30, 2017, with attached exhibits; Affidavit in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Motion to Dismiss of Craig O'Donnell, sworn to August 29, 2017; Substitution of Counsel, dated August 9, 2017; Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Motion to Dismiss, dated August 30, 2017;
22. Notice of Cross-Motion, dated August 24, 2017; Affidavit of Sarah-Anne Trayner, sworn to August 24, 2017, Affirmation of Joseph G. Makowski, Esq., dated August 24, 2017, with attached exhibits; Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability and in Support of Defendants' Cross-Motion for Summary Judgment, dated August 24, 2017;
23. Notice of Cross-Motion, dated August 23, 2017; Affirmation of Anthony DiPaolo, Esq., dated August 23, 2017, with attached exhibit;
24. Notice of Cross-Motion, dated August 1, 2017; Affidavits in Support of Cross-Motion of Frank Giattino, Richard Giannasca and Vincent DeJana, sworn to August 1, 2017;
25. Notice of Cross-Motion, dated July 27, 2017; Attorney Affidavit of Erin Mead, sworn to July 26, 2017, with attached exhibits; Memorandum of Law, dated July 26, 2017;
26. Notice of Cross-Motion, dated August 1, 2017; Affirmation of Peter A. Lauricella, Esq. in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross- Motion for Summary Judgment, dated August 1, 2017, with attached exhibits; Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' [*15]Cross-Motion for Summary Judgment, dated August 1, 2017;
27. Notice of Cross-Motion, dated September 8, 2017; Affirmation of Mark W. Greenfest, Esq., dated August 25, 2017; Affidavit in Support of Jeffrey Audain, sworn to August 29, 2017, with attached exhibits; Memorandum of Law in Opposition to Motion for Partial Summary Judgment and in Support of Cross-Motion to Dismiss, dated August 25, 2017;
28. 
Notice of Cross-Motion, dated August 24, 2017; Affirmation in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment of Michael C. Feinberg, Esq., dated August 24, 2017, with attached exhibit;
29. 
Affirmation of Anthony Fazio, sworn to August 24, 2017, with attached exhibits; Memorandum of Law, dated August 23, 2017.
30. 
Notice of Cross-Motion, dated August 24, 2017; Affidavit in Support of Cross-Motion of Michael A. O'Connor, sworn to August 15, 2017, with attached exhibits; Affirmation in Support of Cross-Motion of Kevin Laurilliard, dated August 24, 2017;
31. 
Attorney Affirmation of Michael Papa, Esq. in Reply and in Opposition to Cross-Motions for Summary Judgment, dated September 25, 2017, with attached exhibits;
32. 
Reply Affirmation of Donald J. Hillmann, Esq., dated October 13, 2017, with attached exhibits; Reply Affidavits of Michael Garvey and Joseph T. Kirchhoff, sworn to October 11, 2017, with attached exhibits; Reply Memorandum of Law in Further Support of Cross-Motion to Dismiss, dated October 13, 2017;
33. 
Affirmation of Joseph Makowski, Esq., dated October 10, 2017; Reply Memorandum of Law in Further Support of Defendants' Cross-Motion for Summary Judgment Dismissing Plaintiff's Verified Complaint in its Entirety, dated October 10, 2017;
34. 
Attorney Affirmation of Michael Papa, Esq. in Reply and in Opposition to Motion to Dismiss, dated October 30, 2017, with attached exhibits;
35. 
Affirmation of Robert L. Arleo, Esq. in Reply to Opposition to Cross Motion for Summary Judgment, dated November 6, 2017; and
36. 
Affidavits of service.



Footnotes

Footnote 1:The Trust originally was formed as the "ELITE Contractors Trust of New York Workers' Compensation Trust," but its name was changed by an amendment to the Trust Agreement dated October 7, 1999 (see Woods Aff., ¶ 30; Ex. B).

Footnote 2:Before it served the Complaint, the Board recalculated the Trust's deficit to reflect the premium cost for an Assumption of Liability Policy ("ALP") purchased on behalf of the Trust, by which future claims liability was transferred to a commercial insurance carrier, and additional settlements with former members (see Compl., Ex. A [Schedule 5]).

Footnote 3:On or about March 2, 2017, the Board issued another settlement offer to non-settling and/or defaulting members that resulted in some additional settlements (see Papa Aff., ¶ 22).

Footnote 4:During the pendency of its motion, the Board settled with Tschetter's Complete Home Improvement, Inc., Tschetter's Construction Corp., Oliveira Contracting, Inc. and G. Largas & Associates, and it requests an order discontinuing the action as against these settling defendants (see Papa Reply Aff., ¶ 5).

Footnote 5:Although the Trust Agreement was amended at least five times, the quoted language regarding joint and several liability remained intact (see id., Ex. B).

Footnote 6:A later version of the J & I Agreement provided for essentially the same terms, but in slightly different language (see Papa Aff., ¶ 48).

Footnote 7:IC-2 is a database kept and operated in the ordinary course of the WCB's business to track and catalog the workers' compensation coverage of the New York employers (see Woods Aff., ¶ 37; Papa Reply Aff., ¶ 131; State of NY Workers' Compensation Bd. v AE Fund, Inc., Sup Ct, Albany County, Connolly, J., index No. L98-08 at 10-11).

Footnote 8:Park Construction Corp.'s ("Park") argument that it was not a member of ELITE is based solely on the Board's inability to locate its membership application, notice of termination and J & I Agreement; notably, Park has not asserted under oath that it was not a member in fact of the Trust. In any event, having accepted the benefits of membership in ELITE over a prolonged period — including the payment of nine workers' compensation claims for Park employees that cost the Trust more than $137,000 (see Papa Reply Aff., ¶ 125; Ex. K) — Park cannot deny that it was a member of ELITE (see Seton Health at Schuyler Ridge Residential Health Care v Dziuba, 127 AD3d 1297, 1299-1300 [3d Dept 2015]).

Footnote 9:In any event, the Board has laid an adequate foundation for the admissibility of the IC-2 data under the business records exception to the hearsay rule in accordance with CPLR 4518 (a).

Footnote 10:The additional requirements set forth in WCL § 50 (3-a) (10) (a) were adopted by the State Legislature in 2011, and the Board did not promulgate 12 NYCRR 317.3 and 317.4 until January 2001.

Footnote 11:Although 12 NYCRR 317.3 (a) requires at least two employers to form a GSIT, this provision was not in effect in 1999 when ELITE was formed.

Footnote 12:In any event, the time in which to challenge the Board's October 29, 1999 approval of ELITE as a GSIT has long since passed (see CPLR 217 [1]).

Footnote 13:Given the clarifying nature of the 2008 legislative amendment and the fact the Remaining Defendants, like all GSIT members, were required to assent to joint and several liability as a condition of GSIT membership, the 2008 amendment should be accorded retroactive effect, as urged by the Board (see Matter of OnBank & Trust Co., 90 NY2d 725, 730-732 [1997]).

Footnote 14:Specifically, the statutory language was amended as follows (with the added language in italics):
The chair shall levy an interim assessment on the members of a defaulted [GSIT] within [120] days of such default or of the effective date of the chapter of the laws of [2008] which amended this subdivision, whichever is later, and against the members of any other terminated [GSIT] when necessary, for such an amount as he or she determines to be necessary to discharge all liabilities of the [GSIT] . . . as they are known at the time of the assessment. The chair may impose subsequent and further deficit assessments, or return funds to members, to adjust the moneys collected to reflect the time of participation, and percent of [GSIT] liabilities for such time. The time limitations included in the first sentence of this subparagraph do not apply to the imposition of any subsequent and further deficit assessments that exceed the interim assessment made by the chair against members of a defaulted [GSIT] or members of any other terminated [GSIT]. Notwithstanding any such action by the chair, each member of the [GSIT] shall remain jointly and severally responsible for all liabilities provided by this chapter including but not limited to outstanding and estimated future liabilities and assessments.

Footnote 15:To the extent that the Fourth Department has held otherwise in Matter of Riccelli Enters., Inc. v State of NY Workers' Compensation Bd. (117 AD3d 1438, 1440 [4th Dept 2014]), it bears emphasis that Matter of Riccelli involved an application for a preliminary injunction, and petitioners' ability to establish a likelihood of success by virtue of their reliance on the 120-day rule is not necessarily determinative of the final outcome of the case. In any event, given the weight of the Third Department authority suggesting that strict adherence to the 120-day limit is not required, this Court declines to follow the decisions of the Fourth Department or Supreme Court, Onondaga County in Matter of Riccelli.

Footnote 16:For this reason, the Court need not rely upon the 2015 amendment to the statute, which appears from its legislative history to have been adopted solely for purposes of clarification following the Riccelli litigation (see Papa Aff., Ex. L).

Footnote 17:In claiming that the Board's assessments are untimely, defendants are, in essence, attempting to challenge the Board's authority to issue the post-reconstruction assessment (see generally Hope for Youth, Inc. v State of New York, 125 AD3d 1211, 1212-1213 [3d Dept 2015]; Buonanotte v New York State Off. of Alcoholism & Substance Abuse Servs., 60 AD3d 1142, 1144 [3d Dept 2009], lv denied 12 NY3d 712 [2009]). Unlike the petitioners in Matter of Riccelli, however, none of the Remaining Defendants sought to challenge the Board's administrative action via a CPLR article 78 proceeding commenced within four months of the disputed assessment (see CPLR 217 [1]; 1 & 3 On Fifth Corp., index No. 2900-13 at 7-8; see generally Matter of Held v State of NY Workers' Compensation Bd., 103 AD3d 1063, 1064-1065 [3d Dept 2013]).

Footnote 18:To the extent that the Remaining Defendants who are pressing for discovery have asserted counterclaims seeking to recover monetary damages from the State, their claims are subject to the exclusive jurisdiction of the Court of Claims (see State of New York v Dewey, 260 AD2d 924, 925 [3d Dept 1995]; State of New York, Workers' Compensation Bd. v Cody Mgt., Inc., 47 Misc 3d 1221[A], 2015 NY Slip Op 50740[U], *14 [Sup Ct, Albany County 2015]).

Footnote 19:After all, New York employers must have workers' compensation insurance, and the Huxley Defendants presumably made payments and/or received invoices from the Trust with respect to this insurance coverage. Moreover, such information would not be in the Board's exclusive possession.

Footnote 20:The Court similarly concludes that any deficiencies in the disclosure provided by the Board to defendants does not warrant the denial of the Board's motion under CPLR 3212 (f).

Footnote 21:Moreover, the Bast Defendants do not claim that they were defrauded as to the joint and several liability to which they assented via execution of the J & I Agreements. Further, absent from the affidavits is any proof that would support a claim of justifiable reliance by the Bast Defendants, an essential element of any claim of fraud (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011]).

Footnote 22:The WCB initially conducted a forensic accounting review of ELITE through L & M after assuming the administration of the Trust in April 2010, which resulted in the issuance of the 2010 DR Report determining ELITE's cumulative deficit to be in excess of $82.2 million as of September 30, 2010. The Board then updated the Trust's deficit in the 2013 Updated Deficit, calculating it to be about $57.6 million as of September 30, 2013. As a result, the Board issued a settlement offer to the Trust membership in January 2014. Finally, following the filing of this action, the Board again updated the Trust deficit, determining it to be approximately $36 million, and utilized this amount in assessing the Remaining Defendants' joint and several liability.

Footnote 23:This language states: "We [the carrier] have your rights . . . to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them," and that "[a]ll rights, duties and obligations . . . are transferred to us" (Papa Aff., Ex. F, p. 4).

Footnote 24:In making this argument, Trombley refers only to the final 2014 assessment issued by the Board, and it is unclear from the proof submitted by Trombley whether its dissolution preceded the 2011 Deficit Assessment.

Footnote 25:Specifically, the proof submitted by Trombley and St. George neither establishes these defendants' compliance with subdivision (a) of BCL § 1007 nor negates the availability of the exception set forth in subdivision (b). Indeed, Trombley merely avers that "[i]t is possible" that it "proceeded for dissolution under BCL § 1001 and so proceeded to conclusion of the process under BCL §§ 1004-1007" (Brooks Aff., ¶ 16). And St. George merely presents a certificate of its dissolution (see St. George Aff., ¶ 4; Gillen Aff., ¶¶ 4-5; Ex. A).

Footnote 26:The LLC Law is modeled on Delaware law, but our Legislature did not incorporate the express requirement that "[a] limited liability company which has dissolved . . . [s]hall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured contractual claims, known to the . . . company" (Del Code Ann TI 6 § 18-804 [b] [1]). LLC Law § 704 (a) merely requires that the remaining assets of an LLC be distributed first to creditors, "whether by payment or by establishment of adequate reserves."

Footnote 27:For example, the record is devoid of proof as to how the winding up was conducted, the assets and/or liabilities of Don Rabideau at the time, the manner in which claims of creditors were addressed and information concerning the distribution of any remaining assets.